(No. 20484.—

THE PEOPLE *ex rel.* James Todd, Defendant in Error, *vs.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.* Plaintiffs in Error.

*Opinion filed October 23, 1931.*

HEARD, J., dissenting.

CHARLES S. CUTTING, for plaintiffs in error.

ANGUS ROY SHANNON, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This case originated in a controversy between James Todd, the attorney for the board of education of the city of Chicago, and the board of education in regard to the relative power and authority of the board and its attorney. The board of education passed two resolutions on November 13, 1929, against the recommendation of its attorney, appointing Frank S. Righeimer and Thomas V. Sullivan special assistant attorneys for a period of two years each, at a salary of $10,000 a year. It also passed two other resolutions, one that Righeimer, until the further order of the board, should continue to be in full charge of condemnation matters, including the trial of condemnation cases, and such other matters as are from time to time committed to him; the other, that Sullivan should continue to be in full charge of tax matters, including the trial of tax cases, and such other matters as are from time to time referred to him. Thereupon Todd, as relator, filed a petition in the name of the People, in the circuit court of Cook county, for a writ of *mandamus* against the board of education and Charles E. Gilbert, its secretary, commanding them to revoke, cancel and expunge from the record the last two mentioned orders. The respondents

filed an answer, to which the petitioner demurred. The respondents moved to carry the demurrer back to the petition, but the motion was overruled, the demurrer was sustained to the answer and a judgment was entered awarding the writ of *mandamus* as prayed. Upon the respondents' appeal the Appellate Court for the First District affirmed the judgment, and upon the respondents' petition a writ of *certiorari* was awarded to review the record.

The facts shown in the record are that James Todd was appointed by the board of education its attorney on March 14, 1927. The term of his office was four years. On the same date Frank S. Righeimer was appointed assistant attorney for the term of one year, and until July 31, 1929, he acted as such assistant attorney. On March 11, 1929, Todd made recommendations to the board of education in regard to the amount of the budget for the law department for the year 1929, recommending the elimination from the pay-roll and budget of four assistant attorneys, whose combined salaries amounted to $26,000, among whom was Righeimer, whose salary was $10,000 a year. No action having been taken by the board on this recommendation, on July 27 Todd notified Righeimer in writing that his services would terminate on July 31, 1929, at which time he would no longer be in the employ of the board or entitled to perform the duties of his position. He also notified the board of this action. On August 6, 1929, by a notice in writing he informed Thomas V. Sullivan, who was already an assistant attorney in charge of tax matters, that he had been assigned to take care of the condemnation matters of the office, to co-operate with Todd and take charge immediately. He reported to the board this assignment of Sullivan and recommended an increase of his salary from $7500 to $10,000 a year. All these recommendations were placed on file by the board. On November 13, by a two-thirds vote, the board passed the four resolutions which have been already mentioned.

The petition alleged that the board of education wrongfully and illegally assumed to control and manage the conduct of the law department of the board of education and the employees therein and to deny to the petitioner the charge, control, direction, advice and conduct of the law department by the adoption of the last two resolutions over the petitioner's objection, and regards and claims that Righeimer is the duly authorized attorney for the board of education in full charge of condemnation matters, including the trial of condemnation cases of the board of education, and now wholly refuses, without any legal cause, right or authority therefor, to recognize the petitioner as in charge and control of such matters or of Righeimer as an employee of the law department of the board; and that the board now regards and claims that Sullivan is the duly authorized attorney for the board in full charge of tax matters, including the trial of cases, and now wholly refuses, without any legal cause, right or authority therefor, to recognize the petitioner as in charge and control of such matters or of Sullivan as an employee of the law department of the board, and thereby refuses to permit the petitioner to do and perform his official duties as attorney of the board and head of the law department of the public school system of the city of Chicago, specifically in condemnation and tax matters, and generally as the board of education thereafter from time to time shall direct. The petition further alleged that although the pending litigation on behalf of the board of education involving condemnation and tax matters has the petitioner's appearance as the attorney for the board entered therein, nevertheless the board, against the consent of the petitioner and over his objection and without any legal authority, has made the assignments of Righeimer and Sullivan to be in full charge and control of said litigation, thereby in substance and in fact ousting the petitioner as attorney for the board in said litigation and thus excluding and depriving him of all super-

vision, control and direction of the same, although, as the petitioner avers, he is now, and at all times has been, ready and willing, as attorney for the board and head of the law department, properly and efficiently to conduct such litigation on behalf of the board.

The Fiftieth General Assembly on April 20, 1917, enacted, with an emergency clause, an amendment to sections 128 to 139, inclusive, and section 161 of the School law, called the Otis act, which has since been in force and under which the school system of the city of Chicago has since been conducted. This act provides that each city having a population exceeding 100,000 inhabitants shall constitute one school district, which shall maintain a thorough and efficient system of free schools, which shall be under the charge of a board of education, which shall appoint as executive officers, a superintendent of schools, who shall have general charge and control, subject to the approval of the board, of the education department, and of the employees therein, of the public schools; a business manager, who shall have general charge and control, subject to the approval of the board, of the business department, and of the employees therein, of the public schools; and an attorney, who shall have general charge and control, subject to the approval of the board, of the law department, and the employees therein, of the public school system. The terms of office of such executive officers shall be four years. In regard to the attorney of the board, it is provided that he shall have charge and control, subject to the approval of the board of education, of the law department, and of all litigation, legal questions, and such other matters as shall be referred to the department by the board. Appointments, promotions and discharge of assistant attorneys shall be made by the board of education only upon the recommendation of the attorney, unless it be by a two-thirds vote of all the members of the board. The attorney may be present at all meetings of the board

of education and shall have a right to take part in its discussions and deliberations but shall have no vote, and he cannot be removed from office except for cause and after hearing, and his assistants can only be appointed or removed upon his recommendation, unless by a two-thirds vote of the board.

The statute gave the attorney charge and control, subject to the approval of the board of education, of the law department and of all litigation, legal questions, and such other matters as should be referred to the department by the board. The law department of a city or other government means a department having charge of the law business of the government. A municipality maintaining such a department cannot, as a general rule, hire or employ outside counsel to attend to the legal business of the municipality. (*People* v. *Faherty*, 306 Ill. 119.) In that case the law made the corporation counsel of the city of Chicago the head of the law department of the city. The board of local improvements of the city appointed an attorney by a resolution entered on its record, and the corporation counsel filed a petition for a writ of *mandamus* to compel the board to expunge from its record this resolution, and to recognize the right of the petitioner, as corporation counsel, to manage and conduct all the proceedings concerning local improvements on behalf of the city of Chicago, and the court awarded the writ. It was argued that the corporation counsel had the right to proceed in such cases without interference by the board, but it was held that the proceedings were to be conducted by the corporation counsel under the direction and control of the board. This does not differ materially from "subject to the approval of the board." In *State* v. *City of Paterson*, 40 N. J. L. 186, the controversy was over the power of the city, under its charter, to employ and pay any person other than the city counsel for legal services. The charter provided for the appointment by the board of aldermen, annually, for a term

of one year, of a city counsel, who was required to defend all actions brought against the city or in which the city was interested, in any court in the State. After reaching the conclusion that in the absence of any prohibition in the charter the board of aldermen might employ associate counsel to assist the city counsel in any case where in its judgment there was necessity for such assistance, the court continued: "But the power of the corporation to employ associate counsel does not involve the right on the part of the city authorities, under the guise of such employment, to withdraw and take out of the hands of the city counsel any particular case or class of cases and to confide their management to others. This brings up for consideration the question as to the legal right of the corporation to employ and pay associate counsel for legal services such as are charged in the bill before the court, and involves an inquiry as to the nature of the employment, the character of the services rendered under it and the circumstances attending their performance. It appears by the return to the writ that the finance committee reported to the board of aldermen that in view of the numerous suits pending against the city they had resolved upon a vigorous defense, and had therefore retained A. B. Woodruff, Esq., as associate counsel, which action of the committee was approved by the board. Under that resolution Woodruff was employed to defend a number of *certioraris* brought to review assessments for street improvements. The entire management of these suits, from their commencement until their final decision, covering a period of fifteen months and extending over parts of the official terms of two different city counsel, was confided by the finance committee to the associate counsel or assumed by him under the employment. * * * Neither of the city counsel holding office during this time took any part in defending the suits. They both testified that Woodruff was employed to take charge of these *certioraris;* that they were not consulted and did not

interfere either in taking the testimony or in the management of the cases. The city counsel were, in fact, superseded, and considered themselves as having no official connection with the cases and as relieved of all responsibility in relation to them. All this was done without any request from them for professional aid or assistance and without any pretense of incompetency or neglect of duty on their part. Upon no legal principle can this action of the city authorities be justified. If the board of aldermen, or any committee of the board, can withdraw part of the law business of the corporation from the control of the city counsel they can in like manner dispose of the whole." This is in accordance with the holding in the *Faherty case,* and both cases are in accordance with *Hope* v. *City of Alton,* 214 Ill. 102, though in this case there was an ordinance expressly prohibiting the employment of assistant counsel. The discussion of the authority of the Attorney General, as head of the law department of the State, in relation to the interference of the legislature or the other departments of the State government with his functions, in *Fergus* v. *Russel,* 270 Ill. 304, is to the same effect.

The express terms of the statute, that the attorney should have charge and control, subject to the approval of the board, of all litigation, legal questions and such other matters as should be referred to the department by the board, necessarily imply that no other authority should have exclusive charge and control of those matters. His control was, of course, subject to the approval of the board—that is, if the action of the attorney in any matter did not meet the approval of the board it could disapprove it and might require different action to be taken, but it could not employ another attorney to take such action. It could not direct the attorney in the management of the business of his office or the method of its work. It could appoint stenographers for him, but it could not direct what stenographers he should employ in particular cases or in particular classes

of cases or kinds of work. If he had investigators the board could not direct who should be employed in any particular investigation. So the board would have no authority to direct which of his assistants should be assigned to any particular class of service. He might personally try any case, negotiate about any matter or make any settlement, subject to the approval of the board, or he might assign any of his assistants to the work. The object of creating different departments with a head for each, who should have charge and control of the affairs of the department, was to have one executive head who should have charge and control of the business and management of that particular department and should be responsible for its conduct and operation, and the object of requiring the action of the executive head to be subject to the approval of the board was to have a curb on such action as a protection against the unsafe, partial, corrupt or otherwise improper conduct of the affairs of the department. Neither the board nor the attorney has exclusive authority. Co-operation of the one with the other is essential. Neither has the exclusive power of determining upon a course of action in all cases. The board has a veto power on the action of the attorney by disapproving of it. It has also the power of initiating action by the exercise of its power to disapprove if its wishes or its legitimate directions are disregarded, and of its power to remove the attorney for cause, after a hearing. It is to be assumed that both the board of education and the attorney are controlled in their action by a desire for the good of the public service, and if there is a disagreement between them, reasonable men can find a proper settlement of their differences. The law contemplates the appointment by the attorney himself of his assistants. Appointments, promotions and discharge of assistant attorneys cannot be made by the board of education except upon his recommendation, unless by a two-thirds vote of all the members of the board. By such two-thirds vote the board may appoint

the personnel of the office, but it cannot take control, through them, of the management and control of the litigation, legal questions, advice and other business of the office. It certainly is not shown by the record to be of vital importance to the welfare of the schools of the city of Chicago either that Righeimer should or should not be in full charge of condemnation matters, including the trial of condemnation cases, or that Sullivan should or should not be in full charge of all tax matters, including the trial of tax cases; but whether it was or not, Todd was by the law the general attorney of the board in charge and control of all litigation, and the question which of his assistants should devote his attention to those classes of work was for his determination. The board cannot, in making such appointments, direct what particular part of the work of the office shall be performed by each of the assistants so appointed. That would be inconsistent with the management and control of the business by the attorney and would reduce him to a mere clerk acting under the direction of the board of education, and this was not what the law contemplated. If by reason of favoritism, prejudice, lack of judgment or other cause his management and conduct of the law department do not meet with the approval of the board and he ignores its disapproval, the remedy is not indirectly to deprive him of the charge and control of the litigation and other business of the department of which he is the executive head, or some part of it, by assigning all or a part of it to the charge of a subordinate in the department or to any other person, but is to remove him from office in the manner provided by the law creating the board and requiring the appointment of an attorney of the board for a term of four years and providing for his removal.

The petitioner concedes the propriety of the appointment of Righeimer and Sullivan as assistant attorneys. His complaint is of the resolutions giving them full charge of certain departments of the work of the office, including

the trial of cases. These resolutions were an unlawful assumption of authority and interference by the board with the petitioner's charge and control of the litigation, legal questions and other matters pertaining to the law department.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HEARD, dissenting.