The People of the State of Illinois ex rel. Raymond M. Cook, Appellee, v. Board of Education of the City of Chicago and The Board of Examiners, Appellants.

Gen. No. 39,958.

42

Opinion filed April 25, 1938.   Rehearing denied May 9, 1938.

RICHARD S. FOLSOM and KIRKLAND, FLEMING, GREEN & ELLIS, both of Chicago, for appellants; FRANK S. RIGHEIMER, FRANK SCHNEBERGER, JOSEPH B. FLEMING, EDWARD C. CALDWELL and THOMAS M. THOMAS, all of Chicago, of counsel.

JOHN E. NORTHUP, CAMERON LATTER and JOHN LIGTENBERG, all of Chicago, for appellee; CAMERON LATTER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The relator, Cook, is a teacher in the public schools of Chicago. On September 9, 1936, and on different days thereafter, the Board of Examiners (as prescribed by the Board of Education) held an examination for the purpose of determining the fitness of candidates to receive certificates of principals of schools. The relator was a candidate and took the examination. He was notified by the Board of Examiners that he had failed. On October 7, 1937, he filed his petition in which he prayed that a writ of mandamus issue to the Board of Examiners and to the Board of Education, directing them forthwith to place relator's name upon the eligible list of persons entitled to receive the certificate of principal together with a certificate that petitioner had obtained a grade of 86.25 per cent in said examination, and commanding respondents to issue forthwith to petitioner such certificate.

The defendants appeared and made a motion and supplemental motion to strike the petition, pointing out specifically objections thereto pursuant to section 45 of the Civil Practice Act [ch. 110, § 169; Jones Ill. Stats. Ann. 104.045], which provides that such motion shall be used instead of a demurrer as under the former practice. The court denied these motions. Defendants elected to stand by their motions and judg-

ment was entered against them, as prayed in the petition. From that judgment defendants appeal.

The question for decision is whether the court erred in denying the motions of defendants to strike the petition. Under the Civil Practice Act, in reviewing the ruling of the trial court on a motion to strike, as formerly in reviewing a ruling upon demurrer, the well pleaded allegations of the petition are to be taken as true, and the language of the pleading is to be construed most strongly against the pleader. Nothing is taken by intendment. The questions arising upon the record require a construction of several sections of the Otis school law. (Ill. Rev. Stat. 1937, ch. 122, pp. 2891–2900, secs. 128–139; Smith-Hurd Ann. Stats., Schools, ch. 122, p. 307 [Jones Ill. Stats. Ann. 123.162–123.181]).

The petition is a typewritten document of 29 paragraphs with prayer for relief. It is verified by the relator. Attached to it and made a part of it are three exhibits.

The petition avers the constitutional requirement that a system of free public schools shall be maintained; the provisions of the statute committing that duty to the Board of Education of the city of Chicago, a body corporate and politic; the direction of the statute that "appointments and promotions of teachers, principals and other educational employees shall be made for merit only"; the power granted to the Board of Education (subject to limitations contained in the statute) to establish by-laws, rules and regulations which shall have the force of ordinances for the entire management of the schools with the provision that these shall be changed only at regular meetings and by a vote of not less than a majority of the full membership of the Board; the grant to the Board of Education of "all powers that may be requisite or proper for the maintenance and the fullest development of an efficient public school system"; the creation by statute of

the Board of Examiners who "shall hold such examinations as the Board of Education may prescribe, upon the recommendation of the Superintendent of Schools, and shall prepare all necessary eligible lists which shall be kept in the office of the Superintendent of Schools and be open to public inspection"; the statutory provisions that it shall be the duty of said Board of Examiners to examine all applicants who are required to hold certificates to teach, and further "the Board of Education shall issue gratuitously to those who pass a required test of character, scholarship and general fitness, such certificates to teach as they are found entitled to receive."

The petition avers that at the times in question there were in full force and effect duly adopted rules of the Board of Education regulating an examination of candidates for certificates to teach and promotion of teachers; that included in these rules were the rules of the Board of Education governing the examination of candidates for certificates of principals; that the rules of the Board of Education with reference to such examination are set forth in Exhibit 1 attached to the petition; that

"In and by said rules of said respondent, Board of Education, so as aforesaid then and there in force and effect, that the examination for said certificate of principal should consist of (1) an oral part which should count one-half of the total mark, and which might include a personal interview, an evaluation of the record of the candidate, an inspection of his work and any other appropriate form of estimating his standing; (2) that in addition to said oral examination, (to count one-half of the total mark) they (candidates) would be examined in one major, three full minors and four half minors and must attain a general average of 80 per cent with no subject below 50 per cent, and that the candidate must obtain a mark of at least 70

per cent on the written, and also on the oral part of the examination. It was further provided in said rules that the major last hereinbefore referred to should relate to professional study, that the three full minors so hereinbefore referred to should relate to subjects English, mathematics, and general history and civics and that the half minors so referred to should relate to the subjects general science, drawing, vocal music and physical education.''

It is averred that at no time prior to the holding of the examination did the Board of Education change, amend or alter these rules in the manner prescribed by statute. This petition avers that, however, on September 2, 1936, the respondents, Johnson, Baker and Crane, who were the Board of Examiners, promulgated a series of changes, alterations and amendments of said rules, regulating the conduct of said examination and the scope of it, and the weight to be attached to the parts or divisions of it. This is averred to have been done without any lawful authority so to do. The alleged rules of the Board are set forth in Exhibit 1, and it is averred that the alterations and amendments of the rules as attempted to be made by the Board of Examiners are contained in Exhibit 2.

In his petition relator says that the rules of the Board of Education divided the examination into two parts, an oral and a written part, each counting one-half of the total mark to be awarded candidates; that these rules also provided that the oral part of the examination might include a personal interview and an evaluation of the record of the candidate, and required that in order to pass the examination a candidate must obtain a general average of 80 per cent with no subject below 50 per cent, and must obtain a mark of 70 per cent on the written and also on the oral part of the examination. The relator says:

''Said rules did not provide that the personal interview be weighed as a distinct and separate third divi-

sion of said examination, so as to require a candidate to attain a fixed grade in said personal interview, taken and considered alone, as a condition to passing said examination.''

It is further averred that Johnson, Baker and Crane (constituting the Board of Examiners) illegally conducted the examination in this manner:

''That said respondents, William H. Johnson, Harry T. Baker and Henry S. Crane, as members of said Board of Examiners caused said examination to be divided into *three divisions or parts, to-wit, written, evaluation of record and personal interview,* and required that a candidate obtain a mark or grade of 75 per cent upon the personal interview, taken and considered alone, and without reference to the grade obtained by such candidate upon the evaluation test aforesaid, which grade ought of right under the rules of said Board of Education of the City of Chicago then and there as aforesaid in force, to have been taken and considered with said grade or mark obtained upon said personal interview, in determining the actual grade or mark obtained upon said oral part of said examination.''

The petition avers that relator participated in the written part of the examination and obtained an average mark or grade therein of 91.25 per cent; and was awarded no mark or grade in any one subject under 50 per cent; that in that portion of the oral examination described as ''evaluation of record'' he was given by respondents a grade or mark of 92.5 per cent; that thereafter on April 6, 1937, petitioner (at the direction of the Board of Examiners and at the time and place designated by them) took the personal interview test and was awarded a grade or mark of 70 per cent thereon; that thereafter the Board of Examiners informed petitioner that because he had not obtained a grade of 75 per cent or over upon the personal interview test he had failed the examination, and that the Board of Edu-

cation of the city of Chicago declined and refused to issue to petitioner a certificate, thus unlawfully depriving him of the benefits thereof.

The relator says that he received and was entitled to receive grades which conclusively established his right to receive a principal's certificate, in that he received a grade or mark of 91.25 per cent on his written examination, which under the rules of the Board of Education counted for one-half of the total mark receivable by him, and he was also entitled to receive under these rules a grade of 81.25 per cent on the oral examination to count under the rules of the Board of Education for the other half of the total mark receivable by him; that this grade of 81.25 per cent would be made up of one-half of the sum of the personal oral examination grade received by him amounting to 70 per cent (being one part of his unwritten or oral examination), and the evaluation grade of 92.5 per cent which he received upon the other part of the unwritten examination, and one-half of the sum of said grade of 92.5 (his evaluation grade) and the 70 per cent received by him on his personal oral examination would have constituted a grade of 81.25 per cent, to which he was entitled under the rules of the Board of Education on his unwritten or oral examination and would have exceeded the required minimum grade of 70 per cent by 11.25 percentage points; that the sum of his written examination grade, namely, 91.25 per cent (being one-half of the final total mark required to be made by him) and his unwritten or oral examination grade of 81.25 per cent, to which he was entitled as before said, and being the other half of the total mark to be made by him, divided by two gave him a grade of 86.25 per cent, which exceeded by 6.25 percentage points the total final mark required to be made by him in order to be entitled to receive a principal's certificate, which final total mark was exceeded by not more

than four of the one hundred and fifty-five candidates who successfully passed the examination.

We have stated relator's claims substantially in his own words. The nub of the matter as we understand it, is that he complains that the Board of Examiners, without authority from the Board of Education and contrary to its rules, made and enforced a rule in substance that on the personal interview test, which was a part of the oral examination, the candidate was required to receive a grade of 75 per cent. The relator does not aver that the personal interview test given him was unfair. He does not assert that there was any fraud in connection with it. He does not aver that the test was made in any discriminatory way, but on the contrary avers that the same test was given to and required of every candidate. His complaint questions only the authority and jurisdiction of the Board of Examiners to apply the test.

Defendants in opposition to this contention, in the first place say that Exhibit 1 fails to disclose any rule of the Board of Education controlling this examination, and they say (citing authorities) that the averment of the bill that there were such rules cannot prevail as against exhibits attached to the bill and made a part of it which negative the averments of the bill in this respect. They further say that assuming the provisions of Exhibits 1 and 2 to amount to rules and regulations of the respective Boards, there is nothing in the rules contained in Exhibit 2 which is inconsistent with those set forth in Exhibit 1; that the provision in regard to the requirement of the personal interview test is at the most only an elaboration rather than a contradiction of the supposed rules and regulations laid down in Exhibit 1. It seems unnecessary to decide this question in view of the conclusion at which we have arrived upon consideration of the further contention of defendants as stated in their motions to strike, that

as a matter of law the Board of Education, under the statute creating it, is wholly without power or authority to make rules governing or controlling the examination of candidates under the merit system; that on the contrary such power and authority is vested exclusively in the Board of Examiners. If this proposition is determined affirmatively, it follows of necessity that the petition of relator is without merit; since he nowhere questions the fairness of the examination as made by the Board of Examiners. We may therefore pass over for the time being these questions as to whether the later alleged rule of the Board of Examiners is inconsistent with alleged rules of the Board of Education as well as other points urged by defendants in their motions to the effect that plaintiff is barred by laches in that while the eligibility list (as determined by the examination) was posted April 29, 1937, the petition in this cause was not filed until October 7 of the same year, that the petition is defective for the reason that it fails to aver that plaintiff made any demand upon defendants for the recognition of his supposed rights prior to the beginning of this suit (*Murphy v. City of Park Ridge,* 298 Ill. 66, 71, 131 N. E. 256; *Coughlin v. Chicago Park District,* 364 Ill. 90, 108, 4 N. E. (2d) 1), and that relator is estopped by taking the examination with full knowledge of the conditions imposed by the examiners.

If the Board of Education as a matter of law was without power and authority to make rules controlling the examination by reason of the fact that the statute vested exclusively in the Board of Examiners the power to do so, then the contention of the relator cannot be sustained upon any ground. We have already recited the pertinent provisions of many sections of the statute as set forth in relator's petition. Other provisions of the statutes are to the effect that the Board of Education shall elect annually from its own number a president, vice president and a secretary and define

their powers and duties; that it shall by a majority vote of the full membership appoint a superintendent of schools who shall have general charge and control (subject to the approval of the Board); that the Board shall in like manner appoint a business manager who shall have general charge and control of business matters (subject to the approval of the Board), and an attorney who shall have general charge and control of legal matters (subject to the approval of the Board); that the superintendent of schools shall hold his office for a term of four years; that the business manager and attorney shall hold their offices for an indefinite term and be subject to removal by the Board at its discretion; that the appointment and removal of the superintendent of schools, the business manager and the attorney (and also assistant attorneys) shall not be subject to the civil service law; that the superintendent of schools shall be removed during the term of employment only for cause by a vote of not less than a majority of all members of the Board upon written charges to be heard by the Board only after 30 days notice, with copy of charges served upon him, and he shall have the privilege of being present with counsel offering evidence, etc., and that pending the hearing he may by a like majority vote be suspended by the Board, provided that in event of acquittal he shall not suffer any loss of salary by reason of the suspension; that the appointment of other employees of the Board of Education (except as therein otherwise provided) shall be made pursuant to the provisions of the civil service law and no civil service employee shall be removed except for cause and then only by a vote of not less than a majority of all the members of the Board, on written charges, with like opportunity to defend; that the superintendent of schools shall prescribe and control (subject to the approval of the Board of Education) the course of study, text books, educational apparatus and equipment, discipline in and conduct of

the schools, and shall perform such other duties as the Board may by rule prescribe pertaining to the education department, etc.

These provisions show that notwithstanding the extensive general powers conferred upon the Board of Education with respect to the control of the schools within the city of Chicago, it was the intention of the legislature to limit (and in some cases take away) these powers under special and particular circumstances. The briefs of the parties concede that the precise question here to be determined as to whether the control of examinations is within the jurisdiction of the Board of Education or the Board of Examiners has never been determined in a judicial proceeding. However, in *People v. Board of Education of the City of Chicago,* 258 Ill. App. 271, this court had occasion to consider the question of whether the attorney for the Board was granted powers which were to be exercised independently. This court held that it was the intention of the legislature to grant to the attorney for the Board such independent powers with reference to the duties of his office. There was an appeal to the Supreme Court, and in *People v. Board of Education of the City of Chicago,* 345 Ill. 486, 178 N. E. 154, the judgment of this court was affirmed. By analogy we do not doubt that a similar rule would be applied with reference to the power and authority vested in the superintendent of schools and the business manager of the Board of Education.

The relator argues that this power and authority is vested exclusively in the Board of Education, basing his contention upon a construction of the language of these different sections of the act. He argues that since the legislature gave "charge" of the public school system to the Board of Education in express terms after adding a comprehensive clause expressly defining the powers given to the Board as not exclusive but as extending to "all the powers that are requisite and proper for the maintenance and the fullest

development of an efficient public school system," and the power to make rules "having the force of ordinances . . . for the entire management of the schools," it cannot be held that it was the intention of the legislature to carve out of these grants of power the highly important task of prescribing the method by which the teachers and employees required to be chosen for merit only should have their merits determined; that it cannot have been the intention of the legislature (which enjoined upon the Board of Education the duty of appointing principals of the schools only for merit) to take from that Board the power of defining what merit should consist of. It may not, relator contends, be supposed that it was the intention of the legislature that this phase of the control and management of the schools should be committed to an independent body unaffiliated with the teaching force and hence so removed from its sphere of influence as to be aloof and impartial. The Board of Examiners, says relator, does not answer to the description of an impartial and independent Board. On the contrary it consists of the superintendent of schools, who is an employee of the Board of Education on a four year contract basis, together with two persons nominated by him but requiring the approval and confirmation of the Board of Education. The relator says it was in the contemplation of the legislature that the two additional members of the Board of Examiners should come from the ranks of the teaching force, and upon the expiration of their term of office should rejoin that body; that the Board of Examiners, as created by the statute, is wholly dependent as to compensation upon the salary that may be allotted by the Board of Education. These are not, it is said, the attributes of an independent body.

The statute defines the duties of the Board of Examiners to be examining applicants who are required to hold certificates to teach, holding such examinations

as the Board of Education may prescribe upon the recommendation of the superintendent, and preparing all necessary eligibility lists and performing such other duties as the Board of Education may require. These, says the relator, are merely routine ministerial duties, in view of which it cannot be maintained that their power and authority is exclusive of that conferred upon the Board of Education by the provision of the statute granting all powers requisite for the maintenance of the schools.

The school law as it existed prior to the enactment of the Otis law, approved April 20, 1917, expressly delegated to the Board of Education (as then constituted) the duty of examining ''all persons offering themselves as candidates for teachers, and when found well qualified to give them a certificate gratuitously.'' (Hurd's Ill. Statutes, 1915–1916, chap. 122, sec. 134, p. 2375.) This provision was omitted from the Otis law. No similar power is thereby conferred on the Board of Education, but this power and duty is by section 138 of the Otis law vested in a board of three examiners. The omission is significant. The evident purpose is manifest. The conclusion is irresistible that it was the intention of the legislature to substitute as to this function the Board of Examiners for the Board of Education.

The relator, however, argues that under the former law the Board of Education was only a department of the city government, while under the new law it is created a body corporate and politic. The creation of the Board of Education as a separate entity is significant as indicating an intention to divorce the schools of the city from all political phases of the city government. This fact does not weaken but on the contrary seems to strengthen the inference that it was the intention of the legislature in constituting the Board of Examiners

to place the appointment and promotion of teachers in the control of a board that would be influenced alone by the welfare of the schools in the performance of these functions. The argument of relator in this respect is not persuasive.

Relator also says that the former statute, unlike the present one, expressly enumerated all the powers of the then Board of Education and did not grant general powers to the Board of Education as it then existed. An examination of the statute does not bear out this assertion. Under the former law the Board of Education as then constituted was granted general powers. (Hurd's Ill. Rev. Statutes, 1915–1916, ch. 122, sec. 133.) The argument is without merit.

Again the relator contends that under the present law the statute constituting the Board of Examiners does not confer power to determine the required grades in examinations; that the power of the examiners is limited by the direction to examine all applicants and in connection therewith, "to hold such examinations as the Board of Education may prescribe." The present statute grants to the Board of Examiners powers and places on that Board the duty of testing all candidates as to their character, scholarship and general fitness. The passing or failure marks are the signs and symbols by which these qualities are manifested. Without the power to determine what grades are required the power conferred on the Board of Examiners would be empty. As this power is not conferred by the statute in express words it would seem to be necessarily inferred. Indeed, in view of the evident intention to take this power from the Board of Education it would seem that the power, if not granted to the Board of Examiners, is not granted at all. This would frustrate the evident purpose of the statute.

Again, relator says that the intention to subordinate the Board of Examiners to the Board of Education is evident by the fact that while rule making power is expressly conferred on the Board of Education no such express power is granted to the Board of Examiners. We do not regard the omission to grant express power in this respect to the Board of Examiners as controlling. It is elementary that the grant of an express power carries with it by implication the grant of all power appropriate and necessary to carry out the power granted. The school law of New York (differing from that of Illinois in some respects) is like it in that it constitutes a Board of Examiners to whom is delegated the duty of examining applicants and candidates and determining their qualifications. The New York statute, like ours, does not expressly grant to examiners rule making powers. Nevertheless, the New York Board of Examiners made such rules and its action in that respect was approved by the highest educational authority of the State. (McKinney's Consol. Laws of N. Y. Ann., 1928, Bk. 16, sec. 871, p. 295; see also sec. 868, p. 389.) See also *In the Matter of the Jurisdiction of the Board of Examiners of the City School District of New York and the Supervision and Control of Teachers' Examinations,* 1921, 25 N. Y. St. Dept. Rep. 275. A similar conclusion was arrived at in *The Matter of the Appeal of Jennie B. Bryan and Celia Shimberg, in Behalf of Themselves and Others similarly situated from the Action of the Board of Examiners of the City School District of New York as to an Examination for Assistant to Principal,* 1922, 27 N. Y. St. Dept. Rep. 334.

The relator argues that the inference of subordination of the Board of Examiners to the Board of Education is indicated by the fact that the statute is silent as to how the rules of the Board of Examiners may be pleaded or proved in legal proceedings, whereas express provision is made in these respects as to rules of

the Board of Education. We are not impressed by this contention. In the absence of statutory provision in this respect the rules of the common law would be applicable and sufficient.

Again, the relator contends that the changes made by the Otis law, as compared with the former law, find sufficient explanation in the observation that the legislature recognized the existence of a ministerial function and a practice that had theretofore obtained in the Board of Education of delegating the duty of conducting examinations to persons not members of the Board. He says it was intended to confer these merely ministerial duties on the Board of Examiners for the purpose of safeguarding the merit system and insuring the conduct of examinations free from questionable influences. The purpose the statute was intended to accomplish is, of course, apparent. There can be no doubt from a consideration of it by particular paragraphs and as a whole that it was the intention of the legislature in enacting the present school law to eliminate the spoils system wherever it then existed and to make its existence impossible thereafter. As a means to that end the duty of examination and the power to apply tests of merit and fitness was taken away from the Board of Education and was placed in the Board of Examiners. It is to be noted that the action does not provide educational qualifications for the members of the Board of Education while it expressly provides such qualifications for the members of the Board of Examiners. For instance, by express provision it makes the superintendent of schools, who is the head of the educational system, a member of the examining board, and requires that the appointment of the other members shall be conditional upon his suggestion and recommendation. Other provisions of the statute indicate that it was the expectation that other members of the examining board should possess educational qualifications. This is indicated by a pro-

vision that when any teacher or principal who has been made a member of the Board of Examiners is relieved of his duties he shall be reinstated in the position from which he was promoted. The statute indicates, therefore, an intention to vest in educational experts the power and the duty of providing the tests by which the merits of candidates shall be determined, and to make the Board of Examiners, in so far as possible, an independent board. Whether the provisions went as far as they should or too far is not for our consideration. The statute, as a whole, compared with the act which it superseded, discloses an intention to place in the Board of Examiners independent and absolute power, in the exercise of which it would not be subservient to any other board. A contrary construction would require us to ignore the manifest intention disclosed by the substitution of the Board of Examiners for the Board of Education, as in the former statute, by the omission in this statute (as formerly) to grant to the Board of Education (either expressly or by implication) the power to determine the character and fitness of applicants and the intention clearly manifested in the whole act that appointments and promotions of teachers in the public schools of Chicago should be made upon merit as determined by an impartial, competent and independent Board of Examiners.

As already stated, it is conceded that the question here is one of first impression. The motions to strike raised purely a question of law. The averments of fact as stated in the petition are admitted. The petition alleges no fraud or partiality or discrimination on the part of the examiners. It does not aver any improper or unfair conduct on their part. It asserts only that the test imposed was without legal authority and calls in question the power and authority of the Board of Examiners. Upon such admitted facts we hold, as a

matter of law, that it was within the powers of the Board of Examiners to apply the test made and this independently of the Board of Education or any rules made by it. The highest authorities of the schools of New York have reached a similar conclusion under similar circumstances.

For the reasons stated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

·O'Connor, P. J., concurs.

McSurely, J., specially concurring: In my opinion the determination of the passing mark is a detail of the examination. It enters directly into the determination of the fitness of the candidates for certificates. The fixing of such passing mark is therefore the exclusive function of the Board of Examiners. This is in substance of the language of the New York Commissioner of Education in passing upon the question whether the Board of Examiners or the Board of Education should fix the passing mark of examinations. 25 N. Y. St. Dept. Rep. 275.

May 9, 1938, order of April 25, 1938, vacated on motion of appellee, appellant consenting.

May 9, 1938, that part of the order of April 25, 1938, remanding the cause, is stricken and the judgment of the superior court of Cook county is reversed.