Douglas Warren WEBSTER, Plaintiff-Appellee, Cross-Appellant,

v.

James F. REDMOND et al., Defendants-Appellants, Cross-Appellees.

Nos. 78–1978, 78–2032.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1979.

Decided May 22, 1979.

Rehearing and Rehearing En Banc Denied June 19, 1979.

**795**

I

Douglas Warren Webster is currently a public schoolteacher employed by the City of Chicago, and except for a brief period of suspension, he has been so employed since 1953. In August of 1970 Webster received a principal's certificate, having taken and passed the examination established by the Board of Examiners for the Board of Education of the City of Chicago.

In January 1971, while he was a teacher in a school maintained by the Board of Education at the Cook County Jail, Webster was arrested and later indicted for the felony of being the receiver of stolen property. As a result of his arrest, Webster was suspended from his teaching duties by the General Superintendent of Schools.

On March 5, 1971 Webster's attorney moved the state trial court to suppress evidence seized at the time of his arrest, alleging that the search of his apartment conducted at that time had been conducted in violation of his constitutional rights. The court sustained the motion and later ordered that the indictment of Webster be stricken.[2]

Webster then demanded reinstatement of his teaching position, and in May of 1971 he instituted a mandamus action in state court to this end. That action was compromised by the parties on the basis of plaintiff's reinstatement to a teaching position with backpay. Webster was subsequently reinstated, but was transferred from the Cook County Jail program to a teaching position at Whittier School in Chicago.

In the fall of 1971 Webster was recommended by a local principal nominating committee for the principalship of Delano Elementary School. This nomination was processed through the proper channels and resulted in the recommendation of Webster by the General Superintendent to the Board of Education. The Board met in executive session on January 14, 1972 to consider the promotion.

Robert J. Krajcir, Chicago Bd. of Ed.—Law Dept., Chicago, Ill., for defendants-appellants, cross-appellees.

Terry Yale Feiertag, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before SWYGERT and SPRECHER, Circuit Judges, and NOLAND, District Judge.[1]

SWYGERT, Circuit Judge.

This appeal concerns an alleged employment discrimination. The plaintiff, a black schoolteacher in the Chicago public school system, claims that he was the victim of such discrimination at the hands of the Chicago Board of Education.

The threshold issue is whether the Board of Education deprived the plaintiff of a protectable liberty or property interest when it refused to promote him to the position of principal. The district court found that the plaintiff had been deprived of both a liberty and a property interest without due process of law. Because we find no protectable interest to be implicated in this case, we reverse. On the other hand, we affirm the district court's entry of judgment for the defendants as to plaintiff's claims based on racial discrimination in employment.

1. The Honorable James E. Noland, United States District Judge for the Southern District of Indiana, sitting by designation.

2. On November 22, 1974 the record of Webster's arrest and indictment was expunged from the public records in accordance with Illinois law.

After Webster's name had been proposed and the information concerning his career as a teacher had been distributed to the Board, a deputy superintendent reviewed for the Board the arrest and indictment. The Board's attorney supplemented these remarks regarding the circumstances involved and informed the Board of the granting of the suppression motion and the striking of the indictment. The Board then voted against the promotion by a vote of six to four, with one abstention.[3]

In keeping with the Board's policy, no public disclosure was made regarding the failure to approve the promotion. When representatives of the Delano School sought information, they were told that the Board knew facts which they did not. When Webster met with the deputy Superintendent on January 19, 1972, he was not told the reasons for the Board's failure to approve his promotion.

Following the January disapproval, Webster was nominated by the local principal nominating committee of the Doolittle East Elementary School. During an executive session of the Board on April 26, 1972, the General Superintendent sought the consensus of the Board regarding this nomination. The Board voted down a motion to give consideration to Webster's promotion to the rank of principal without prejudice. Perceiving that there was not "a reasonable likelihood of appointment by the Board," the General Superintendent did not recommend Webster for promotion to the Doolittle East principalship.

After the April meeting, members of the Doolittle East committee made numerous attempts to ascertain the reasons behind the failure to promote Webster. In November 1972 a member of the Board gave committee members her opinion that Webster would not be promoted to the principalship of any school, but she declined to state the reasons for her view.

On November 29, 1972 Webster instituted this action, which was tried to the court without a jury. The case against certain defendants, primarily those who had been appointed to the Board after the April 26, 1972 meeting, was dismissed at the close of plaintiff's case. Plaintiff's claims of racial discrimination were dismissed as to all defendants at the close of the evidence. Judgment against the plaintiff was entered in favor of three defendants who had voted for Webster's promotion at the January 14, 1972 meeting of the Board. Judgment for the plaintiff and against the remaining defendants was entered on the grounds that they had deprived Webster of his property and liberty in violation of the Due Process Clause of the Fourteenth Amendment. These defendants filed an appeal in this court, and plaintiff cross-appealed from the dismissal of his racial discrimination claims.

## II

The determining issue in the main appeal is whether liberty or property interests sufficient to invoke the protection of the Fourteenth Amendment have been implicated. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property . . . [and] the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "[T]o determine whether due process requirements apply in the first place, we must look . . . to the *nature* of the interest at stake." *Id.* at 570–71, 92 S.Ct. at 2705–2706 (emphasis in original).

Before making that determination, it is important to define the relatively narrow scope of the inquiry. At this stage of the analysis, the reasons for the Board's decision are irrelevant. If no protectable

---

**3.** The district court, apparently relying on the informal minutes of the meeting made by the General Superintendent's administrative assistant, found the vote to be as listed above. One Board member listed as in favor of the promo-

tion, Warren Bacon, testified that he in fact voted against it. The results of the vote were never officially recorded, since the General Superintendent withdrew his recommendation after the unfavorable vote.

liberty or property interest is found to be implicated, no process is "due" and no reasons or hearing need be given. Certainly this is true to the extent that the reasons have not been made public, although public explanations may affect liberty interests.[4] With these limitations in mind, we begin by inquiring into whether any constitutionally protectable interests are involved. We must determine (1) whether the Board's decision not to promote Webster affected his protectable interest in liberty, and (2) whether Webster had a property interest in obtaining the promotion to the principalship in question.

The inquiry begins with a review of recent Supreme Court cases which have dealt with this issue. In *Board of Regents v. Roth, supra*, a teacher hired for a fixed term of one academic year was told without explanation that he would not be rehired. In evaluating the implication of liberty interests, the Supreme Court noted that all it had before it was the fact that the teacher was not rehired. On this basis, the Court did not find a constitutionally protectable liberty interest, at least where the person remained free to seek jobs other than the one for which he was not rehired. 408 U.S. at 575, 92 S.Ct. 2701.

The Court also noted in *Roth* that certain factors were not present:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433,

437 [91 S.Ct. 507, 510, 27 L.Ed.2d 515] . . . . . In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's "good name, reputation, honor, or integrity" is at stake.

> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this, again, would be a different case.

*Id.* at 573–74, 92 S.Ct. at 2707 (footnote and citations omitted).

Two more recent Supreme Court cases serve to clarify the *Roth* holding. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court was required to evaluate the liberty or property interests at stake in a suit brought by a person whose photograph and name were included in a circulated list of "active shoplifters" after he had been arrested on a shoplifting charge which was later dismissed. The list was distributed by the police in the form of a flyer to area merchants. Davis complained that even though his current employer had not dismissed him, his future employment opportunities would be seriously impaired. The Court held that Davis' interest in reputation was of a type which, although protectable by state tort law, did not amount to either liberty or property in Fourteenth Amendment terms. The "defamation" perpetrated by the police through the flyer did not work any change in Davis' status as theretofore recognized under state law. 424 U.S. at 712, 96 S.Ct. 1155.[5] The

---

4. Note also that in this inquiry focusing on procedural due process, we are not concerned with the presence of impermissible discriminatory reasons, such as race.

5. The Court commented on *Roth*:

> Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.

Court also noted that apart from the procedural guarantees of the Due Process Clause, no substantive limitation upon state action encompassed within the "liberty" term of the Fourteenth Amendment had been violated. Davis' claim that the state may not publicize the record of an official act such as an arrest was held to be without merit. *Id.* at 712–13, 96 S.Ct. 1155.

*Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), involved the firing of a policeman without a hearing, although the reasons for the dismissal were not made public, the officer was told privately that he had been dismissed because of failure to follow orders and other conduct unsuited to an officer. These reasons were reiterated during pre-trial discovery. The Court held first that the officer had no protectable property interest. It then held that, even assuming that the explanation for the officer's discharge was completely false, he had not been deprived of a protectable liberty interest. "The truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired." 426 U.S. at 349, 96 S.Ct. at 2079–80 (footnote omitted). "The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." *Id.* at 350, 96 S.Ct. at 2080. As to the officer's contention that the reasons given for the discharge were so serious as to constitute a stigma that might severely damage his reputation, the Court held that no valid claim had been stated. The privately communicated reasons could not form the basis of a claim, and neither could the reiteration of those reasons in the course of a judicial proceeding commenced after the alleged injury had been suffered. *Id.* at 348, 96 S.Ct. 2074.

■ Reviewing the facts of the case at bar in light of the foregoing decisions leads to the conclusion that the Board's actions did not impair any of Webster's liberty interests protected under the Fourteenth Amendment. He remains free to seek public employment in positions other than the ones to which he was not promoted. *Cf. Roth, supra,* 408 U.S. at 573–75, 92 S.Ct. 2701. Indeed, he has remained in the employ of the Board. *See Paul v. Davis, supra,* 424 U.S. at 710, 96 S.Ct. 1155. The reasons for his failure to be promoted were not made public by the Board prior to this judicial proceeding, *see Bishop v. Wood, supra,* 426 U.S. at 348, 96 S.Ct. 2074, and any publication of the official fact of his failure to be promoted is without merit as the basis for a due process claim. *See Paul v. Davis, supra,* 424 U.S. at 712–13, 96 S.Ct. 1155.

The fact most favorable to Webster's claimed deprivation of a protectable liberty interest is the Board's vote relating to his second nomination. The Board's refusal to consider that nomination without prejudice was not, however, equivalent to a regulation barring Webster from all other public employment. *Cf. Roth, supra,* 408 U.S. at 573, 92 S.Ct. 2701. Indeed it did not even bar him from continued employment with the Board, let alone from the rest of the public educational system. It amounted to a statement that the Board would not at that time reconsider its previous decision not to promote Webster to the rank of principal. The second vote itself thus did not further implicate any liberty interests.

■ As to a stigma attaching as a result of this second vote, no reasons for the vote were ever published prior to this litigation. The mere fact of nonpromotion does not itself implicate a protectable liberty interest, *see Roth, supra,* and because neither the Board nor any of its members published reasons for the decision, it cannot be said that the Board made "[a] charge against him that might seriously damage his standing and associations in his community." *Id.* 408 U.S. at 573, 92 S.Ct. at 2707.[6]

424 U.S. at 710, 96 S.Ct. at 1165.

**6.** His arrest and indictment were at the time matters of public record for the publicity of which the Board was not responsible. And, moreover, publication of an official act such as an arrest does not itself give rise to a meritorious due process claim. *Paul v. Davis,* 424 U.S.

Given the predicate that Webster failed to prove the deprivation of a constitutionally protected liberty interest, we must next inquire whether he had a protectable interest in property which was impaired or destroyed by the Board's actions. The Supreme Court noted in *Roth*:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709.

As has been made clear in subsequent decisions of the Supreme Court,[7] the key proprietary ingredient is "entitlement." Thus, the issue is whether possession of a principal's certificate itself entitles Webster under state law to an appointment as a principal whenever an opportunity for such an appointment is created.[8]

The Illinois School Code, Ill.Ann.Stat. ch. 122, §§ 1 *et seq.* (Smith-Hurd), contains a variety of provisions pertaining to the appointment of principals.[9] Section 34-8 provides:

> Appointments, promotions and transfers of teachers, principals, assistant and district superintendents and all other employees in the teaching force shall be made . . . by the board only upon

the recommendation of the general superintendent of schools or by a majority vote of the full membership of the board.

Section 34-84 contains the following provisions:

> Appointments and promotions of teachers, principals and other educational employees shall be made for merit only, and after satisfactory service for a probationary period of 3 years (during which period the board may dismiss or discharge any such probationary employee upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools) appointments of teachers and principals shall become permanent, subject to: (1) termination by compulsory retirement at the age of 65 years; (2) the rules of the board concerning conduct and efficiency; and (3) removal for cause in the manner provided by Section 34-85.

Section 34-85 deals with post-probationary removal:

> No teacher or principal appointed by the board of education shall (after serving the probationary period of 3 years specified in Section 34-84) be removed except for cause, and then only by a vote of a majority of all members of the board, upon written charges presented by the general superintendent of schools, to be heard by the board or a duly authorized committee thereof.[10]

at 712–13, 96 S.Ct. at 1165–66. As to the published personal opinion of one Board member that Webster would never get the promotion, this unofficial statement does not amount to an official, published position of the Board. At any rate, even if this were construed as damaging to his reputation, no hearing "would be required each time the [Board] in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee." *Id.* at 710, 96 S.Ct. at 1165.

7. *See Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

8. Webster's right to possess the certificate is not at issue. As the district court found:

Plaintiff still holds this certificate and is on the principals' eligibility list maintained by the Board of Education. His certificate has never been questioned; and his right to hold that certificate has not been adversely affected by any action or ruling of the Board of Education, or any of its subsidiary agencies.

9. The relevant provisions are those of section 34, which apply only to cities having a population exceeding 500,000. Ill.Ann.Stat. ch. 122, § 34-1 (Smith-Hurd).

10. This section was substantially modified by Public Act 80–1308, effective August 7, 1978; however, the provision that "no teacher or principal appointed by the board of education shall (after serving the probationary period of 3 years specified in Section 34–84) be removed except for cause" has been retained.

A reading of these statutory provisions highlights certain key aspects of the issue. The probationary period for newly appointed or promoted teachers and principals is three years. After the probationary period has expired, dismissal may only be for cause, and a hearing is required. During the probationary period after promotion, however, there is neither a requirement that the dismissal be for cause nor a requirement for a hearing. All that is required for dismissal during probation is a recommendation, with accompanying written reasons, from the general superintendent. Thus a probationary teacher or principal may be discharged or dismissed without a hearing. *People ex rel. Thomas v. Bd. of Ed. of City of Chicago*, 40 Ill.App.2d 308, 317, 188 N.E.2d 237, 242 (1963) ("There is no doubt that under sections 34–84 and 34–85 of the School Code a hearing in connection with a probationary discharge is not required."). This probationary period does not begin until the actual appointment from an eligibility list. *Id.*

If Webster is correct in his contention, given the statutory gloss discussed above, it would mean that although the Board could have promoted Webster and then dismissed him without a hearing, the Board could not refuse to promote him without a hearing. Put differently, if Webster were to prevail on this point, it would mean that he would be entitled to a hearing if not promoted, but if promoted he would not be entitled to a hearing prior to dismissal. He would have the rights of a tenured, permanent principal before promotion but after promotion he would lose these rights for three years. A construction leading to such an absurd result cannot be correct, and the Illinois courts have said as much by refusing to count pre-appointment time served by temporary employees toward fulfillment of the probationary period.[11]

Despite the fact that no hearing would be required were he promoted and then dismissed, Webster maintains that he is nonetheless entitled to the promotion under state law and that this entitlement requires the due process of a hearing before deprivation. He bases this claim on the fact that section 34–84 of the School Code provides that promotions to principalships shall be made "for merit only," construing this point to mean that the Board has no choice but to appoint a candidate possessing a valid certificate from the Board of Examiners if a vacancy occurs when he comes to the head of the eligibility list or is nominated by a local committee. We do not find Illinois law to so confine the Board.

To begin with, the Illinois courts have recognized that the Board of Examiners of the Board of Education and the Board of Education itself "are two separate entities so created by [the] legislature. See Ill.Rev. Stats. (1965), c. 122, § 34–2 (Board of Education) and § 34–83 (Board of Examiners)." *Crofts v. Bd. of Ed. of the City of Chicago*, 105 Ill.App.2d 139, 149, 245 N.E.2d 87, 93 (1969). The *Crofts* court pointed out that the mere fact that the Board of Examiners allowed only two categories of health classifications did not itself prevent the Board of Education from in effect establishing a third.

On the other hand, the Illinois courts have observed that the Board of Examiners and not the Board of Education is the body empowered to make rules governing the examination of candidates. *People ex rel. Cook v. Bd. of Ed. of the City of Chicago*, 295 Ill.App. 41, 14 N.E.2d 520 (1938). This is in accord with the purpose of the so-called Otis law, the 1917 revision of the School Code, which was to replace the spoils system with a merit system. *Id.* Yet another Illinois decision should be noticed in this context. In *Courtney v. Bd. of Ed. of the City of Chicago*, 6 Ill.App.3d 424, 286

---

11. *See, e. g., People ex rel. Thomas v. Bd. of Ed. of City of Chicago*, 40 Ill.App.2d at 313, 188 N.E.2d at 240:

Illinois courts have specifically held that persons occupying positions in the public service and in municipal employment as mere temporary employees cannot, by performing such services as temporary employees, gradually acquire civil service or tenure rights; to permit such a practice would nullify the purposes of tenure laws.

N.E.2d 25 (1972), the appellate court ruled that a complaint challenging the action of the Board of Education in bypassing certain persons holding principal's certificates near the top of the eligibility list in favor of others nearer the bottom stated a valid cause of action. The facts were that certain persons who had held their certificates for a longer time and thus were at the top of the list were bypassed when the Board appointed others who had not held their certificates as long. But this decision does not state that any given person possessing a certificate is entitled to a principalship by virtue of reaching the top of the eligibility list. At most it means that the Board may not consider those lower on the list before considering those higher up. It is a case involving priority of consideration and not entitlement to promotion.[12]

In order to resolve the questions before us we need not definitively decide what the phrase "for merit only" means in the Illinois law. It is sufficient if we can state with certainty that, whatever its meaning, it does not create an entitlement to a principalship under Illinois law, and that we can do. There is no indication that the Board of Education is merely a formalistic "rubber stamp" in the promotion process, which

Webster's argument would require. Rather, there is every indication that, whatever the order it must consider them in, the Board of Education as a separate entity is to have the final word and power of promotion or denial over those candidates who have been certified to it by the Board of Examiners. The statute states that promotions shall be made by the Board, and by no other. That they are only to be made for merit and not for patronage reasons surely does not prevent the Board from exercising its judgment against the merits of a given applicant. There is thus no indication in Illinois law that possession of a certificate from the Board of Examiners means anything more than that one is to be placed on the eligibility list and considered at the appropriate time by the Board of Education. Claims of entitlement to promotion sufficient to evoke constitutional protection must be based on a surer footing.[13]

What we have said concerning Webster's claimed deprivations of procedural due process applies equally to any alleged substantive due process claims. *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1 (7th Cir. 1974) (Stevens, J.). "As this court has explicitly held, there can be no claim of a denial of due process, either

---

12. A similar case is currently under appeal in the Illinois courts. In *Maiter v. Chicago Bd. of Ed.*, No. 77–243 (appeal pending in the Appellate Court of Illinois, 1st Dist.), members of the Chicago Principals Association who either accepted appointments, had been offered appointments or were on the most recent principals' eligibility list awaiting appointment brought suit against the Board of Education challenging the procedures used by the Board by which it obtains, from a local school nominating committee, the nomination of a certificated candidate to fill a principalship vacancy. The suit thus challenges the system of community input set forth in section 34–8.2 of the School Code, which became effective October 1, 1977, whereby a nominating committee comprised of community members and parents interviews candidates on the eligibility lists when a principalship vacancy arises at a school and nominates a person or persons of its choice upon which the General Superintendent and Board act, either following the committee's recommendation or rejecting it. This was the procedure followed in Webster's case, which has not been challenged by plaintiff.

Although this case is currently *sub judice*, we need not await its outcome. As in *Courtney* the issue involved is priority of consideration as opposed to entitlement to position.

13. Besides having a basis in state statutory or case law, a claim of entitlement may also be grounded on "rules or mutually explicit understandings." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). These understandings, however, must be *mutually* explicit and must be such as Webster "may invoke at a hearing." *Id.* And they must be defined with reference to state law. *Id.* at 602 n. 7, 92 S.Ct. 2694, n. 7. Here, we find no mutuality of understanding, and as the foregoing discussion has shown with regard to sections 34–84 and 34–85 of the School Code, it would be absurd to conclude that state law provides for the right to a hearing before hiring but not afterward. Thus, not only is mutuality lacking here, but Webster's claim is inconsistent with the codified tenure and hearing provisions. *Cf. Eichman v. Indiana State University Board of Trustees*, 597 F.2d 1104 (7th Cir., 1979).

substantive or procedural, absent deprivation of either a liberty or property right." *Eichman v. Indiana State University Board of Trustees*, 597 F.2d 1104 (7th Cir., 1979).

 We treat as belonging to this substantive due process category Webster's contention that state law precluded the Board from in any way considering the fact of his arrest and the attendant circumstances. Webster seeks support in this regard from section 21–1 of the School Code, which provides that "[i]n determining good character under this Section, any felony conviction of the applicant may be taken into consideration, but such a conviction shall not operate as a bar to registration." Assuming, *arguendo*, that this provision is relevant, there was no absolute bar to registration here. Rather, the fact of and circumstances surrounding the arrest and indictment were taken into consideration by the Board. At any rate, there would seem to be a difference between an absolute disqualification based on the mere fact of arrest and consideration of events and circumstances leading up to and surrounding an arrest and subsequent indictment. Since presumably such events and circumstances in and of themselves could be considered if they had not eventuated in an arrest and indictment, the occurrence of an arrest does not itself render such consideration impermissible.[14] Nor is any presumption of innocence violated where, as here, no criminal liability or penalty is at issue. And to argue in this case that deprivation of a promotion is a penalty is circular: It would be no penalty if one were not entitled to the promotion, and to assume that one is so entitled assumes the very question at issue in deciding if constitutional due process protections apply.

Inasmuch as we are unable to say that Webster suffered the deprivation of any constitutionally protectable liberty or property interests, we reverse the conclusion of the district court that the Fourteenth Amendment Due Process Clause was violated in this case.

### III

We turn now to the issue presented by Webster in his cross-appeal, namely, whether the district court properly dismissed his claims based on alleged racial discrimination by the Board in violation of the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981, 1983, 2000e–3, and 2000e–5.

The district court found that there was no evidence that Webster's race or color formed the basis of any action by or conduct of the Board of Education. We agree with this conclusion.

 The district court intimated that there was a failure to prove a discriminatory intent on the part of the Board. Webster counters by stating that *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), substituted a showing of discriminatory impact or effect in place of an explicit showing of discriminatory intent. He also complains that he was deprived of the opportunity to show the discriminatory effect when the district court refused to hear evidence on the racially discriminatory impact of using arrest records to disqualify applicants from employment consideration.

The fault in Webster's argument is his failure to show a pattern or practice of use of arrest records by the Board. The *Griggs* substitution of impact or effect for intent is premised on the existence of a pattern or practice on the part of an employer. No such practice has been shown here. Instead, as has been discussed above, there was no absolute disqualification or refusal to consider Webster's application on the part of the Board because of the fact of the arrest. Rather, the Board considered the circumstances giving rise to and surrounding the arrest and concluded that it would not approve Webster's promotion. No pat-

---

**14.** Thus, for example, the fact that stolen property was found in Webster's possession would remain the same whether he was arrested or not. And the probativeness of this fact remains the same regardless of its exclusion from evidence in a criminal proceeding for Fourth Amendment policy reasons.

tern or practice having been shown, the district court was correct in excluding evidence of the effect of such a putative practice.

 Webster also contends that he has met the criteria for a *prima facie* case as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Assuming, *arguendo* that he did,[15] the district court was still correct in dismissing the discrimination claims on the merits. Webster concedes in his brief that the Board's reason for declining to promote Webster related to the Board's assessment of Webster's fitness to be a principal. (Brief of Cross-Appellant at 54.) As has been demonstrated above, the Board is charged with the final authority in assessing and approving promotions to the rank of principal. Webster claims, however, that the Board's decision to retain him as a teacher while denying him the promotion to principal cannot be a "legitimate, nondiscriminatory" one such as would rebut a *prima facie* showing under *McDonnell Douglas. See* 411 U.S. at 802, 93 S.Ct. 1817.

Even assuming that the standards for teachers and principals are the same, Webster's assertion that the Board's decision is arbitrary and thus discriminatory is not supported by the facts. The record shows that the Board reinstated Webster as a teacher following suspension as the result of the compromise and settlement of a pending mandamus action. This alone would seem to explain any logical discrepancy. Moreover, in evaluating the rebuttal of a *prima facie* case, it is appropriate to consider "subjective" criteria, *McDonnell Douglas, supra* at 803, especially when, as we have found here, the employer statutorily bears the final burden of fitness determination. Based on the foregoing, and on a lack of other evidence supportive of a claim of racial discrimination, we agree with the

district court's dismissal of these claims on the merits.

In sum, the judgment of the district court dismissing plaintiff's claims of racial discrimination based on the Thirteenth and Fourteenth Amendments and on 42 U.S.C. §§ 1981, 1983, 2000e–3, and 2000e–5 is affirmed. The judgment of the district court in favor of the plaintiff based on his Fourteenth Amendment due process claims is reversed, and this portion of the case is remanded with direction to vacate the judgment. Costs are awarded to the defendants.

---

15. There is at least some question whether Webster has shown a *prima facie* case, which question we need not address in light of our treatment of the issue. We do note, however, that the Court in *McDonnell Douglas* placed this *caveat* on its four-pronged test for a *prima facie* Title VII case:

The facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to differing factual situations.
411 U.S. at 802 n. 13, 93 S.Ct. 1817, n. 13.