## Fred W. Hartman et al., Appellees, v. City of Chicago, Appellant.

### Gen. No. 44,985.

Opinion filed March 13, 1951. Rehearing denied April 4, 1951. Released for publication April 6, 1951.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, of Chicago, for appellant; L. LOUIS KARTON, Head of Appeals and Review Division, CARL H. LUNDQUIST and SYDNEY R. DREBIN, Assistant Corporation Counsel, all of Chicago, of counsel.

MICHAEL F. RYAN, of Chicago, for appellees; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

A suit by Fred W. Hartman and 362 other plaintiffs for "balance of salaries" alleged to.be due them. City of Chicago, defendant, filed a motion to strike the complaint and dismiss the suit. The trial court overruled the motion and defendant elected to stand by the mo-

tion. The trial court thereupon entered judgments in favor of all the plaintiffs, in various amounts, that totaled $139,141.25. Defendant appeals.

The complaint alleges that plaintiffs, 363 in number, are patrolmen in the classified service of the Department of Police of the City of Chicago; that prior to their becoming patrolmen in the classified service they served under temporary appointments at various dates beginning with February 9, 1945, and throughout the years 1945, 1946, to October, 1947; that said temporary appointments were necessary, due to the fact that the eligible list created by examination for the filling of vacancies in the position of patrolman had been exhausted by certifications and appointments therefrom; that while employed as temporary patrolmen they took the examination for patrolman, successfully passed the same, were accorded military credit, and were certified and appointed patrolmen in the classified service; that said certifications and appointments began on or about September 12, 1947, and continued through October, 1947; that plaintiffs, while serving as temporary patrolmen, were paid the rate of salary appropriated by the City Council of the City of Chicago for the year 1945 for temporary patrolmen, which sum was the same as that appropriated for patrolmen in their first year of service in the civil service, of $2,598 per annum; for the year 1946 at the rate of $2,778 per annum, being the same salary as appropriated for patrolmen for the first year of service in the civil service; for the year 1947 as appropriated for temporary patrolmen on the basis of $2,778 per annum, which was the same rate appropriated for patrolmen of the first year of service in the civil service; and for the year 1948 the salary appropriated for the first year of service as patrolmen in the civil service at $3,012 per annum up to the 13th month of service in the civil service after the date of certification and appointment.

The complaint then sets forth the rate of compensation and salary appropriated for the years 1947 and 1948 by the City Council of the City of Chicago (hereinafter referred to in this opinion). The complaint further alleges:

"IV. . . . That after the posting of the eligible list on September 12, 1947, the plaintiffs, and each of them, were duly certified and appointed police patrolmen in the classified service of the Department of Police of the City of Chicago; that after their certification and appointment as police patrolmen they were entitled, as members of the classified service, to be paid on the basis of their actual service and at the rate appropriated by the City Council of the City of Chicago for the years 1947 and 1948; that the plaintiffs were not paid on said basis but were paid only the minimum rate appropriated for 1947 and 1948 for one year after the dates of their respective certifications and appointments as police patrolmen in the classified service of the Department of Police of the City of Chicago, as being in their first year of service, whereas they were in their second and others in their third year of actual and continuous service during 1947 and 1948, their actual and combined service consisting of time they were employed as temporary policemen and time employed as members of the classified service as patrolmen to December 1, 1948; that they were actually in their second and others in their third year of continuous service as patrolmen as hereinafter set forth in Paragraph VI of this complaint showing the dates of their temporary appointment, the dates they were certified and appointed, the amounts they should have received together with amounts paid and amounts illegally withheld from them for the years 1947 and 1948, and the total amounts of the difference in salary withheld for the years 1947 and 1948, as appropriated by the City Council of the City of Chicago for the

respective years 1947 and 1948, due them because of the City of Chicago paying the minimum rate instead of second or third year rate of pay as appropriated for patrolmen and because of the continuous service as patrolmen in the Department of Police of the City of Chicago as hereinafter set forth in Paragraph VI of this complaint, which by reference thereto is made part hereof as though fully set forth herein. . . ."

The complaint further alleges:

"V.   That they and each of them are now patrolmen in the classified service of the Department of Police of the City of Chicago; that they and each of them have been employed from the respective dates hereinafter set opposite their names in Paragraph VI of this complaint continuously from the dates of their respective appointments as temporary policemen and as patrolmen in the classified service of the Department of Police of the City of Chicago; that during the period they were employed as temporary patrolmen they purchased their own uniforms, revolvers, and were subject to the same risks and hazards as all patrolmen of the City of Chicago performing the duties of police patrolman; that they had equal authority and precedence and were subject to the same rules and regulations as all policemen; that they and each of them faithfully and efficiently performed the duties of patrolmen to the satisfaction of their superiors; that after they had served as temporary policemen in conformity with the Civil Service regulations, they and each of them served the prescribed six month probationary period and because thereof their appointments were and are deemed complete under the provisions of Section 10 of 'An Act to regulate the Civil Service of Cities' (as amended); that they have been paid the minimum rate of salary appropriated for police patrolman for more than three years last past; that after nearly two years under temporary appointment they were paid, after being certified and appointed as patrolmen in the classified

service of the Department of Police of the City of Chicago, the minimum rate appropriated for police patrolman; that they were not paid the salary appropriated, after their certification and appointment, on the basis as appropriated for actual service, or total continuous service, as patrolman of the City of Chicago which was appropriated for the years 1947 and 1948 by the City of Chicago; that they were paid at the minimum rate for 1945 at $2598 per annum, for the year 1946 at the minimum rate of $2778 per annum and after their respective certifications and appointments in October of 1947 they were still paid at the minimum rate of $2778 per annum as being only in their first year of service whereas they were in their second year and others were in their third year of actual service, and because thereof entitled to the higher rate fixed by the City Council of Chicago, predicated upon years of service; that the appropriation for the City of Chicago for the year 1948 fixed the minimum rate of salary of $3012 per annum for 'first year of service', $3168 per annum for 'second year of service', and $3480 per annum 'for third year of service and thereafter'; that the total salary actually received by them and the salary the respective plaintiffs and each of them are entitled to are hereinafter set forth in this complaint in Paragraph VI and by reference thereto made a part hereof as though fully incorporated herein.''

The complaint then sets forth in detail the amount that each plaintiff claims is due him. Defendant's motion to strike avers, *inter alia,* that the complaint and the matters therein contained in the manner and form as the same are therein set forth are not sufficient in law for plaintiffs to maintain their action and that defendant is not bound by law to answer the same.

Plaintiffs state that *"the plaintiffs' rights to salary depend upon the appropriation ordinances, and nothing else.''* We are, therefore, called upon to interpret

parts of certain appropriation ordinances. The pertinent part of the 1946 ordinance reads as follows:

"Salaries and wages—
"For the employment of the following as needed:
" . . .

*"Patrolman—first year of service at $2,778.00; second year of service at $2,922.00; third year of service and thereafter at $3,210.00 per annum* and temporary patrolmen at $2,778.00 per annum . . . $20,700,000.00."

(Italics ours.)

Plaintiffs base their claims upon the appropriation ordinances for 1947 and 1948, the pertinent parts of which read:

(1947)
"Salaries and wages—
"For the employment of the following as needed:
" . . .

*"Patrolman—first year of service at $2,778.00; second year of service at $2,922.00; third year of service and thereafter at $3,210.00 per annum* and temporary patrolmen at $2,778.00 per annum . . . $21,044,922.00."

(Italics ours.)

(1948)
"Salaries and wages—
"For the employment of the following as needed:
" . . .

*"Patrolman—first year of service at $3,012.00; second year of service at $3,168.00; third year of service and thereafter at $3,480.00 per annum* . . . $22,327,064.00."

(Italics ours.)

Plaintiffs state:

"It is the plaintiffs' theory that the salary rates for their positions were and are fixed by the annual appropriation ordinances passed by the City Council of

108

the City of Chicago; that said appropriation ordinances for the years 1947 and 1948 appropriated for the payment of salaries of civil service patrolmen at three rates of pay,—for the first year of service, second year of service, and third year of service *(which is necessarily based upon actual service in the Police Department)*; that from October of 1947, when the plaintiffs became civil service patrolmen, the plaintiffs were entitled to receive and be paid the rate of salary fixed in the appropriation based on the years of actual service each plaintiff had completed at that time; that contrary to the specific provision of the appropriation ordinance, the plaintiffs, upon becoming civil service patrolmen, were treated as in their first year of service and paid at the minimum rate, although practically all the plaintiffs were then either in their second or third year of actual service and thus entitled to be paid at the rate appropriated for second or third year of service; that thus the plaintiffs were not paid their full salaries as appropriated and due them for the period from October of 1947 to December 1, 1948, and that they properly sued at law to recover judgments for the respective amounts of the salary differential withheld and due each of them."

Plaintiffs contend: "(A) The City Council alone has the power to fix the rates of salaries of all city employees, including Police Patrolmen, in its annual appropriation ordinance," and "(B) Annual appropriation ordinances fixing varying rates of pay for Police Patrolmen based on 'years of service' necessarily means actual service and is not limited to employment in the 'civil' service excluding all prior service rendered in the same capacity under temporary appointment. 'Years of service' comprehends the entire years of service as patrolman." Plaintiffs further contend: *"In 1946 and 1947 the appropriation ordinances specifically fixed a definite sum to be paid to temporary patrolmen, but in the same appropriation ordinances*

109

*varying rates were established for civil service patrol-
men, based upon their years of service.* So long as the
plaintiffs remained temporary patrolmen and the ap-
propriation ordinances were worded as they were in
1946 and 1947, the plaintiffs could not claim, and in-
deed do not claim anything more than the minimum
rate of pay appropriated. But upon their becoming
civil service patrolmen the plaintiffs became entitled
to be paid at the rates appropriated for patrolmen hav-
ing the actual years of service which they possessed.
*The plaintiffs' rights to salary depend upon the ap-
propriation ordinances, and nothing else.* The conten-
tion that in return for their civil service rights and
privileges the plaintiffs were only entitled to receive
the minimum rate of salary appropriated for patrol-
men in their first year of service, is completely absurd.
As hereinabove pointed out, the plaintiffs' rights to
salary did not, and do not depend upon the fact wheth-
er or not their civil service appointment was a new
appointment, or a reappointment, or a continuing ap-
pointment. Their rights to salary depend upon the
actual years of service rendered by them in the service
of the Police Department, as explicitly provided for in
the appropriation ordinances, and under those ordi-
nances they are clearly entitled to the salary differ-
entials withheld from them.'' (Italics ours.)

We deem it important to note that plaintiffs, in the
last contention, admit that the word *"Patrolman,"*
used in the appropriation ordinances of 1946 and 1947
*meant a civil service patrolman and that "varying
rates were established for civil service patrolmen,
based upon their years of service."*

Defendant, in support of its position that ''the trial
court erred in failing to sustain the defendant's motion
to strike the complaint and to dismiss the suit,'' con-
tends that ''service as temporary patrolmen cannot be
added to service as patrolman in the civil service in

110

determining the rate of salary of patrolmen in the civil service''; that the language in the 1948 ordinance, '' 'Patrolman—First Year of Service' can only be construed to mean patrolman in the first year of civil service, because the word 'patrolman' is limited to personnel in the civil service, and does not embrace persons not in the civil service such as 'temporary patrolmen,' '' and that ''it would be contrary to the appropriation ordinance . . . to permit the plaintiffs to add their service as temporary patrolmen to their service as patrolmen in the civil service in computing their rate of pay.'' Defendant further contends *that all patrolmen are civil service employees but that temporary patrolmen are not civil service patrolmen;* that there is a clear and important distinction in the status of temporary patrolmen and civil service patrolmen; that plaintiffs concede, as they must, that a temporary patrolman is appointed for a limited period and can be discharged at will; that a civil service patrolman who has completed his probationary period can only be discharged after the filing of charges and the holding of a hearing as provided by Section 12 of the Cities Civil Service Act; that patrolmen in the civil service have pension rights, but that temporary patrolmen have not; that mere employment as a temporary patrolman, regardless of the length of that service, cannot ripen into a civil service appointment, and that a temporary patrolman, like all applicants, must take and pass the required civil service examination before he can be appointed a civil service patrolman.

The term ''Patrolman'' has a definite meaning, viz., a *de jure* patrolman who has taken a civil service examination, passed the same, and has been certified and appointed to the position of patrolman in the classified civil service in accordance with the Cities Civil Service Act. The record shows that the City Council in the appropriation ordinances for 1946, 1947 and 1948 used

■

the term "Patrolman" to designate a civil service patrolman. The pertinent parts of the appropriation ordinances for 1946 and 1947 clearly show that the City Council understood the important distinction between "patrolmen" and "temporary patrolmen" and had that distinction in mind when it made an appropriation for "Patrolman" and fixed their pay *in accordance with their years of service,* and made a separate appropriation for "temporary patrolmen," fixing their pay at a definite amount. Plaintiffs admit, as heretofore stated, that the words that we have italicized in the 1946 and 1947 appropriation ordinances, viz., "first year of service," "second year of service" and "third year of service *and thereafter,*" have reference *only* to service as patrolmen in the classified civil service, and they state that as the said ordinances made a definite appropriation for temporary patrolmen at $2,778.00 per annum without regard to the question of years of service they have been paid in full for the time that they were temporary patrolmen; but they insist that the same words in the appropriation ordinance of 1948 must be given an entirely different interpretation, that they must be interpreted to mean actual service in the Police Department, *including plaintiffs' service as temporary patrolmen,* and that as there are no words in the 1948 appropriation ordinance that import years of civil service only, the words that we have italicized should be interpreted to mean actual service in the Police Department and that such service would entitle plaintiffs to avail themselves of services as temporary patrolmen in the Police Department in determining the rate of pay to which they were entitled when they became civil service patrolmen.

Plaintiffs state that "the plaintiffs' rights to salary depend upon the appropriation ordinances, and nothing else," and because of the admissions they were obliged to make as to the meaning and effect of the

appropriation ordinances of 1946 and 1947 plaintiffs must necessarily rely upon the language in the appropriation ordinance of 1948 in support of their claim that in determining their salaries under the 1948 appropriation ordinance the language in the ordinance as to years of service must be interpreted to mean actual service in the Police Department, *including plaintiffs' services as temporary patrolmen.* In interpreting the words in question in the 1948 appropriation ordinance, it is necessary to note, at the outset, *that the Council in that year appropriated only for civil service patrolmen. There were temporary patrolmen in service in 1946 and 1947, and the Council, therefore, made, in both years, a separate appropriation for their salaries; but in 1948 there were no temporary patrolmen in service. The plaintiffs, and the other temporary patrolmen, after examination and certification, had been appointed civil service patrolmen in accordance with the provisions of the Civil Service Act. No questions as to the pay of temporary patrolmen or their time of service as temporary patrolmen were before the Council in 1948 for consideration and determination,* and as the words we have italicized in the 1948 ordinance are the same that were used in the ordinances of 1946 and 1947 it would seem to necessarily follow that the words we have italicized in the 1948 appropriation ordinance pertain exclusively to civil service patrolmen and their years of service as civil service patrolmen. Plaintiffs, in attempting to justify their interpretation of the 1948 ordinance, forget their admission as to the meaning of the same words in the ordinances of 1946 and 1947, ignore the settled meaning of the important word "Patrolman," viz., a *de jure* patrolman in the classified civil service, and attach no weight to the important fact that the words "first year of service at $3,012.00," "second year of service at $3,168.00" and "third year of service *and thereafter*

113

at \$3,480.00 per annum," immediately follow the word "Patrolman." As there are no words in the 1948 ordinance that even refer to temporary patrolmen and their time of service as temporary patrolmen, plaintiffs are forced to argue that the word "Patrolman" without the qualifying words "civil service" should be interpreted to include civil service patrolmen and temporary patrolmen, and that as the words "service" are not qualified by the word "civil" the words "service" should be interpreted to mean actual service in the Police Department and that such actual service would include plaintiffs' time of service as temporary patrolmen. We have heretofore stated the established and definite meaning of the word "Patrolman." The words in the 1948 ordinance as to years of service clearly denote services of a permanent character, such as services performed by patrolmen in the civil service, but they certainly do not denote services performed by a "temporary patrolman," where the appointment is for a limited period and the temporary patrolman can be discharged at will. As heretofore stated, plaintiffs are forced to admit that the same words as to years of service contained in the 1946 and 1947 appropriation ordinances had reference only to services by patrolmen in the classified service. Why should these same words in the 1948 appropriation ordinance be given an entirely different meaning, especially as the words are used in an ordinance that appropriates for civil service patrolmen exclusively, and where the pay of temporary patrolmen, or their time of service, was not even before the Council for consideration and determination? The services of plaintiffs as temporary patrolmen ended when they were appointed civil service patrolmen, and if plaintiffs' interpretation is sound then the Council intended that as soon as plaintiffs were appointed civil service patrolmen they were entitled to the same salary *as civil*

*service patrolmen received in their second or third year as civil service patrolmen.* That the Council did not regard a year of service as a temporary patrolman as entitling such patrolman to higher pay the next year is shown by the following: The Council, in the 1946 appropriation ordinance, fixed the salary for temporary patrolmen at $2,778.00 per annum, and in the 1947 appropriation ordinance, after plaintiffs had served one year *or more* as temporary patrolmen, the Council fixed the same definite salary for them. The Council, thereby, recognized the short and uncertain tenure of temporary patrolmen. Plaintiffs could not by performing services as temporary patrolmen gradually acquire civil service rights: to permit such a practice would nullify the purposes of the civil service laws. There is certainly nothing in the 1948 appropriation ordinance to support plaintiffs' strained argument that their services as civil service patrolmen were but a continuation of their services as temporary patrolmen and that while serving as temporary patrolmen they were "accumulating time on their years of service" but that they could not receive the benefit of the time until they became patrolmen in the classified service. When plaintiffs were appointed patrolmen in the civil service each received an appointment to an entirely new and distinct position and, in our judgment, were then entitled, under the appropriation ordinance of 1948, to receive only the salary appropriated by the City Council for patrolmen in the first year of civil service. It is well to remember that plaintiffs admit in their brief that the City Council used the term "Patrolman" in the ordinances of 1946 and 1947 to mean patrolmen in the civil service, and that the "varying rates were established for civil service patrolmen, based upon their years of service." We hold that the words in question in the appropriation ordinance of 1948, viz., "Patrolman—first year of service at

$3,012.00; second year of service at $3,168.00; third year of service and thereafter at $3,480.00 per annum," were clearly intended to apply only to services performed by civil service patrolmen. Plaintiffs' interpretation of the meaning and intent of the appropriation ordinance of 1948, is, in our judgment, clearly untenable. As we have no power nor right to fix or modify the salaries of plaintiffs it is our duty to exercise care that we do not assume such power, in effect, by misinterpreting the plain language of the ordinance.

It is our considered judgment that under the facts and the law the trial court erred in denying defendant's motion to strike the complaint and dismiss the cause, and in entering judgment for plaintiffs.

The judgment order of the Superior court of Cook county, entered April 29, 1949, is reversed *in toto,* and the cause is remanded with directions to sustain defendant's motion to strike the complaint and dismiss the cause.

*Judgment order reversed in toto and cause remanded with directions.*

SCHWARTZ, P. J. and FRIEND, J., concur.