People of the State of Illinois ex rel. Marylyn Thomas, Plaintiff-Appellee, v. Board of Education of the City of Chicago, a Body Politic and Corporate, Benjamin C. Willis, General Superintendent of Schools, and Richard C. McVey, Assistant Superintendent in Charge of Personnel, Defendants-Appellants.

Gen. No. 48,735.

First District, Second Division.

January 29, 1963.

James W. Coffey, of Chicago (Frank S. Righeimer, John T. Mehigan, and Robert E. Harrington, of counsel), for appellants.

Edward Kaplan of Kaplan and Kaplan, and Jerome Feldman, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Relator filed her petition for writ of mandamus alleging that defendants had terminated her services "as a probationary kindergarten-primary teacher" without giving her the reasons for her dismissal, and asking that she be reinstated in her position. Defendants' answer averred that she was discharged by the board of education (board) as a probationary teacher within the statutory three-year probationary period on

the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools, as required by statute (Ill Rev Stats 1961, c 122, § 34–84). The case was heard by the trial judge on the pleadings, consisting of relator's petition, defendants' answer thereto, together with their exhibits consisting of the board report of dismissal of relator, a probationary teacher, statements of reasons for dismissal, letter and copy of board report sent to relator, and, in addition, relator's group exhibit, being her personnel file records from the board, which included the official records of her employment as a substitute teacher and as a regular teacher subject to probation. The trial judge issued a writ of mandamus, and defendants appeal.

There is no dispute as to the essential facts. From February 1953 to June 1958 relator was employed by the board as a substitute teacher on a temporary teaching certificate and on a day-to-day basis. On March 2, 1957 she took the examination for a regular teaching certificate as a kindergarten-primary teacher, but failed to pass. Subsequently, on March 15, 1958, she again took the examination, and this time was successful. Effective September 1, 1958, pursuant to the provisions of the School Code (Ill Rev Stats 1961, c 122, § 34–84), relator was appointed from the eligible list as a teacher on her regular teaching certificate, subject to a probationary period of three years. The pertinent language of the statute is as follows:

" . . . . Appointments and promotions of teachers . . . shall be made for merit only, and after satisfactory service for a probationary period of 3 years (during which period the board may dismiss or discharge any such probationary employee upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools) appointments of teachers . . . shall become permanent . . . ."

310

On October 31, 1960, relator, pursuant to the request of the department of personnel of the board, was given a health examination. The director of medical and school health service reported that relator's behavior and attitude were indicative of a mental and an emotional disturbance, in consequence of which it was recommended that she not teach at that time. The department of personnel then advised relator that she was not to return to school duties until she received medical approval. Shortly thereafter she reported to the department of personnel that she would confer with her physician and would request psychiatric treatment before seeking reinstatement, and accordingly applied for an illness leave of absence based on the medical and school health service report. Her application was approved by the board; the illness leave was granted on November 23, 1960. However, relator subsequently refused to follow the advice and suggestions of the department of personnel and refused to avail herself of medical assistance. Thereafter, on January 11, 1961, the board adopted a report dismissing relator from its employ as a probationary teacher on the recommendation, accompanied by written reasons, of the general superintendent. The report stated that relator had failed to satisfactorily complete the three-year probationary period required by the School Code for attainment of tenure. To this report was attached a statement of reasons for termination of relator's services as a probationary teacher; the statement is as follows:

"Miss Marylyn Thomas has made repeated and persistent telephone calls from the Joseph Stockton Elementary School building to the home of a former employer, harassing the said former employer and his family. It has been necessary for the police department to be called to remove her from the premises of said former employer. She

311

has persisted in making such harassing telephone calls after being admonished to desist by her superiors in the Board of Education."

A statement of the facts, headed "REASONS FOR DISMISSAL," on file in the office of the secretary of the board, is as follows:

"Miss Thomas made phone calls from the school building to the home of a former employer who is a Chicago business man, and resident of the Chicago Metropolitan area, harassing the wife and family of this former employer. Miss Thomas admitted making the calls and alleged that she 'only wanted to be friends with the persons called.' The calls continued until Miss Thomas threatened to visit the home of the former employer. Miss Thomas carried out her threats and created such a disturbance that the police had to be called to remove her from the premises.

"In an effort to clarify for Miss Thomas the seriousness of her involvement, the Department of Personnel called her in for interviews in order to ascertain her explanation of her conduct. During the interviews Miss Thomas indicated little concern for the seriousness of her conduct. Her conduct during the interviews was such that it was believed that there was need for a health examination. This examination was arranged for her by appointment with the Bureau of Medical and School Health Services of the Board of Education. On November 2, 1960, Miss Thomas was informed by Dr. McVey, Assistant Superintendent in charge of Personnel, that it would be advisable for her to seek some medical assistance for herself.

"On November 29, 1960, a further conference was held with Miss Thomas to inquire what steps had been taken with respect to her health

312

condition. At this meeting with the Assistant Superintendent and Director of Teacher Personnel, Miss Thomas indicated that she was perfectly well and that under no circumstances would she request medical assistance. At this time the attitude of Miss Thomas indicated that it would be unwise to permit her to attain full tenure as a teacher in Chicago Public Schools."

On January 12, 1961 the department of personnel sent relator a copy of the report adopted by the board on January 11, 1961, together with the reasons for her dismissal, and pursuant to this action her services as a probationary teacher were terminated at the close of the school day effective January 13, 1961.

In issuing the writ, the trial judge arrived at his decision by adding to relator's period of service as a probationary teacher the time she was employed on a day-to-day basis as a substitute teacher before the commencement of her probationary period; he concluded, as a matter of law, that on January 13, 1961, when relator was discharged, she had completed six years and four months of full-time teaching as a substitute and regular teacher, that on the basis of such combined service she had completed the three-year probationary period required under Illinois law for the position of permanent tenure teacher after appointment, and that, accordingly, she was entitled to a hearing by the board before she could be discharged.

Illinois courts have specifically held that persons occupying positions in the public service and in municipal employment as mere temporary employees cannot, by performing such services as temporary employees, gradually acquire civil service or tenure rights; to permit such a practice would nullify the purposes of tenure laws.

In Hartman v. City of Chicago, 343 Ill App 103, 98 NE2d 148 (1951), 363 temporary appointee patrol-

men, who later qualified and were appointed as civil service patrolmen, sought to have their time of service as temporary patrolmen added to their time of service as civil service patrolmen in computing their pay under an ordinance which varied the rate of pay according to length of service. On appeal the reviewing court said (p 115):

> "Plaintiffs could not by performing services as temporary patrolmen gradually acquire civil service rights: to permit such a practice would nullify the purposes of the civil service laws. There is certainly nothing in the 1948 appropriation ordinance to support plaintiffs' strained argument that their services as civil service patrolmen were but a continuation of their services as temporary patrolmen and that while serving as temporary patrolmen they were 'accumulating time on their years of service' but that they could not receive the benefit of the time until they became patrolmen in the classified service. When plaintiffs were appointed patrolmen in the civil service each received an appointment to an entirely new and distinct position and, in our judgment, were then entitled, under the appropriation ordinance of 1948, to receive only the salary appropriated by the City Council for patrolmen in the first year of civil service. . . ."

Subsequently Hartman and seven other patrolmen (People ex rel. Hartman v. Hurley, 345 Ill App 409, 103 NE2d 512 (Abst 1952)) sought to have the time of their service as temporary patrolmen added to their time in service as civil service patrolmen for the purpose of increasing their seniority rights or rating in a promotional examination for sergeants of police; this court adhered to its opinion in the prior Hartman case and reversed the judgment of the trial court issuing the writ.

In People ex rel. Dragel v. O'Connor, 10 Ill App 2d 196, 134 NE2d 624 (1956), the court, basing its decision on the Hartman cases, held that time served in the unclassified position of police chemist in the crime laboratory of the detective bureau of the police department of Chicago by a police sergeant who was on leave of absence and who had taken a promotional examination for the position of police lieutenant was not time of "actual service in the rank or grade from which promotion is sought," within the rule of the civil service commission relating to promotions that credit for seniority shall be given only for actual service in the rank or grade from which promotion is sought.

In New York, in the case of Hilsenrad v. Miller, 284 NY 445, 31 NE2d 895 (1940), the court of appeals rejected the plea of the petitioner to enforce his reinstatement to a state civil service position to which he had been appointed on a temporary basis. By statute, temporary appointments were limited to one month; the petitioner claimed that even though his original appointment was for temporary employment, his retention in service for a period of ten months entitled him to the legal right of tenure which is an incident to permanent civil service employment. The court said (p 898):

> "Our conclusion is that the fact that by a succession of extensions the petitioner was continued in his position for a period of nine months after the expiration of the statutory term for a temporary appointment, did not serve to invest him with rights, including tenure, which the law attaches to the status of permanent civil service employment. Being exempt from the usual civil service requirements for appointment, temporary appointees '. . . are entitled to none of the advantages secured by period of tenure under the civil service rules.' Koso v. Greene, supra, 260 NY

315

page 494, 184 NE page 66. In the case last cited the opinion by Crouch, J., states (page 495 of 260 NY, page 66 of 184 NE): 'Permanent appointments are made without reference to whether the appointee is holding a temporary or provisional appointment to the same position, or how long such appointment has lasted. These appointments are mere stop-gaps, exceptions of necessity to the general rules with respect to the filling of such positions, and are in no sense probationary. While such appointments may on occasion be succeeded by a permanent appointment, this may only be by virtue of examination and eligibility under the civil service laws, and not by reason of any ripening of the temporary or provisional appointment into a permanent appointment.' "

■ ■ The term "probationary period," although not specifically defined by statute, connotes an appointment from an eligible list following an examination; and a probationary period, being a testing period, begins with the date of the appointment which will ripen into a permanent position following the statutory probationary period. In the instant case the statutory probationary period of three years had not been completed, and therefore relator's contention that she was entitled to a hearing is without merit. If the ruling of the trial judge in this case were to be approved, the board could retain the services of temporary teachers to the exclusion of regularly qualified teachers, a practice which would be contrary to the entire spirit of the Tenure Statute, and the board would thereby be given the power to circumvent and nullify the Tenure Act. Such an interpretation would permit the board to do indirectly what the statute forbids it to do directly. Hankenson v. Board of Education, 15 Ill App2d 440, 446, 146 NE2d 194 (1957). Our courts have consistently held in similar situations that, under

the Civil Service Law, appointments of persons not on an eligible list as temporary employees in preference to persons on such a list cannot be sustained. People ex rel. Caslin v. Geary, 330 Ill App 172, 179–180, 71 NE2d 96 (1946); People ex rel. Fleming v. Geary, 322 Ill App 338, 345–346, 54 NE2d 247 (1944); People ex rel. Corbett v. Allman, 312 Ill App 484, 494–495, 38 NE2d 810 (1942).

■ There is no doubt that under sections 34–84 and 34–85 of the School Code a hearing in connection with a probationary discharge is not required. Illinois courts, in construing similar statutory provisions under the Civil Service Act, have consistently held that a probationary employee may be discharged or dismissed without a hearing. Rose v. Civil Service Commission, 14 Ill App2d 337, 340–341, 343–344, 144 NE2d 768 (1957); People ex rel. Ballinger v. O'Connor, 13 Ill App2d 317, 323–324, 142 NE2d 144 (1957); and Kenyon v. City of Chicago, 135 Ill App 227, 229 (1907). In Fish v. McGann, 205 Ill 179, 183, 68 NE 761 (1903), the Supreme Court laid down the rule that an appointee is not in the classified service until the probationary period has expired.

In her petition for writ of mandamus relator did not allege, nor is it shown by the record, that she completed the statutory period required of a regular teacher for the attainment of tenure; in fact, relator makes no such contention. The record clearly shows that all the provisions of the School Code with respect to dismissal of probationary teachers were observed.

Relator was certainly aware of her status as a temporary teacher, for she took two examinations in an attempt to establish tenure. She knew that it was necessary for her to obtain a regular teaching certificate before she could be appointed, serve her probationary time, and acquire tenure as a regular teacher. Temporary teachers are engaged for temporary situations.

Relator relies on Betebenner v. Board of Education, 336 Ill App 448, 84 NE2d 569 (1949). That case involved the construction of the Tenure Act affecting downstate teachers; by its express terms the act excluded Chicago teachers, as relator concedes in her brief. Downstate teachers, after successfully completing a two-year probationary period, acquire tenure on a contractual continued service basis. In Chicago no contract is entered into; appointments are made from an eligible list comprised of candidates who are successful in the examination required by statute and who have received the requisite certificates, and tenure rights attach only after satisfactory service for a probationary period of three years.

Following oral argument, relator submitted two additional authorities, McCormick v. Board of Education, 58 NM 648, 274 P2d 299 (1954), and Sherrod v. Lawrenceburg School City, 213 Ind 392, 12 NE2d 944 (1938). Both these cases are readily distinguishable from the instant proceeding. In the McCormick case the court stated (p 305) that the question before it was whether plaintiff was on tenure when the board attempted to discharge her. At that time she had completed courses in education which she took during summer vacation, as directed by the school superintendent; subsequently she had taught two years under two successive one-year contracts forwarded to her with covering letters which stated in substance that she had been approved for continuation on tenure by the board. Under the circumstances, the court concluded that she was professionally qualified to receive the benefits of the Tenure Act, and that the receipt of the final letter referred to established that she had a tenure status. Likewise in the Sherrod case, where plaintiff taught art twelve days a month under a written contract conforming to the statute, the court held (pp 944–945) that she was a regular teacher entitled to the benefits of the Tenure Act. In its decision

the court distinguished (p 945) Board of School Com'rs v. State ex rel. Wolfolk, 209 Ind 498, 199 NE 569 (1936), saying that the contract there involved was entirely different, the teacher being merely a substitute, with no definite contract to teach at any time. In the Wolfolk case the teacher was discharged without hearing or trial; on review the court held (p 572) that a part-time teacher, without a statutory teacher's contract, was not a permanent teacher, and thus lacked tenure protection. In the instant proceeding relator could have been discharged without hearing at any time during the three-year probationary period—and she so admits.

For the reasons indicated, we hold that the trial judge erred in issuing a writ of mandamus. It is elementary that a petition for such a writ must show on its face a clear right to the relief asked by allegations of specific facts, that the burden rests on the plaintiff to show a clear and an undoubted right to the writ at the time of demand, and that the plaintiff must establish every material fact essential to show the plain duty of the defendant before the courts will interfere. Daniels v. Cavner, 404 Ill 372, 375–376, 88 NE2d 823 (1949); People ex rel. Pignatelli v. Ward, 404 Ill 240, 243–244, 88 NE2d 461 (1949); Coughlin v. Chicago Park Dist., 364 Ill 90, 108–109, 4 NE2d 1 (1936); and Stott v. City of Chicago, 205 Ill 281, 286, 294, 68 NE 736 (1903).

For the reasons indicated, the judgment of the Superior Court is reversed, and the cause remanded with directions to enter judgment against relator.

Judgment reversed, and cause remanded with directions.

BRYANT, P. J. and BURKE, J., concur.