Samuel RANDLE, Plaintiff,

v.

The CITY OF CHICAGO, a Body Politic, Richard G. Albrecht, Commissioner of the Chicago Fire Department, and William E. Cahill, Chairman of the Department of Personnel, Defendants.

No. 79 C 392.

United States District Court, N. D. Illinois, E. D.

Aug. 28, 1979.

Stephen B. Horwitz, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiff.

Joseph Gagliardo, Asst. Corp. Counsel, Chicago, Ill., for defendants.

ROSZKOWSKI, District Judge.

After careful consideration of the briefs filed in this case and the Report and Recommendation of the Magistrate, the court hereby adopts the Report and Recommendation of the Magistrate. Accordingly, plaintiff's motion to strike defendants' affidavits is denied. It is further ordered that defendants' motion to strike and dismiss the complaint is construed as a Motion for Summary Judgment and it is denied as it relates to issues of intentional racial discrimination and it is granted as it relates to due process issues.

MAGISTRATE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO STRIKE AND DISMISS COMPLAINT

JOHN W. COOLEY, Magistrate.

Defendants have filed a Motion to Strike and Dismiss the Complaint for Declaratory, Injunctive and Monetary Relief. The motion has been fully briefed and plaintiff has moved to strike certain affidavits attached to defendants' reply memorandum. For reasons stated in the accompanying supporting memorandum;

IT IS RECOMMENDED that plaintiff's Motion to Strike Defendants' Affidavits be DENIED.

IT IS FURTHER RECOMMENDED that the court construe Defendants' Motion to Strike and Dismiss the Complaint as a Motion for Summary Judgment and that it be DENIED as it relates to issues of intentional racial discrimination and GRANTED as it relates to due process issues.

IT IS FURTHER RECOMMENDED that the district court give some consideration to suggesting to the Executive Committee that this case be reassigned to the Honorable Frank J. McGarr, as an issue has been raised as to whether defendants' actions, as alleged in this Complaint, amount to a contempt or a circumvention of Judge McGarr's September 12, 1978 Supplemental Order on Firefighter Hiring entered in Case No. 73 C 661.

MAGISTRATE'S MEMORANDUM IN SUPPORT OF REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO STRIKE AND DISMISS COMPLAINT

Defendants have filed a Motion to Strike and Dismiss the Complaint for Declaratory, Injunctive and Monetary Relief. The motion has been fully briefed and plaintiff has moved to strike certain affidavits attached to defendants' reply memorandum. For the reasons stated *infra*, it is recommended that plaintiff's Motion to Strike Defendants' Affidavits be denied, that the district court construe defendants' Motion to Strike and Dismiss the Complaint as a Motion for Summary Judgment and deny it in part and grant it, in part, and that consideration be given to suggesting to the Executive Committee that this case be reassigned to Judge McGarr as related to Case No. 73 C 661.

2. *Nature and Scope of Consideration of Defendants' Motion*

As plaintiff correctly observes, defendants' motion to strike and dismiss the Complaint, which is supported by facts outside the pleadings, must be treated as a motion for summary judgment under Fed.R.Civ.P. 56. See Rule 12(b)(6), Fed.R.Civ.P.; *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971); *General Dynamics Corp. v. U.S.*, 558 F.2d 985 (Ct.Cl.1977). Treated as such, parties must be given a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6).

Summary judgment under Rule 56, Federal Rules of Civil Procedure, is an extreme remedy which should be sparingly employed. *City National Bank of Fort Smith, Arkansas v. Vanderboom*, 422 F.2d 221, 223 (8th Cir.), *cert. denied*, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); *Homan Mfg. Co. v. Long*, 242 F.2d 645 (7th Cir. 1957). It should be entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Fed.R.Civ.P. The court may rely only on facts in such exhibits

which would be admissible in evidence.[1] Fed.R.Civ.P. 56(e).

The basic mission of the summary judgment procedure is to allow a court to pierce the pleadings and assess proof in order to see whether there is a genuine need for a trial. *Gauck v. Meleski*, 346 F.2d 433 (5th Cir. 1965). Issue finding and not issue resolution is the court's task under such procedure. *Hackensack Water Co. v. Village of Nyack*, 289 F.Supp. 671 (S.D.N.Y.1968). In performing its task, the court must draw inferences from underlying facts contained in such materials as affidavits, exhibits, and depositions, in a light most favorable to the non-movant. *Technograph Printed Circuits, Limited v. Methode Electronics, Inc.*, 356 F.2d 442, 446–47 (7th Cir.), *cert. denied*, 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966). The non-movant's allegations must be taken as true, to the extent that they are consistent with its evidence before the court. *See Goodman v. Mead Johnson Co.*, 534 F.2d 566 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). It is the court's duty to resolve all doubts as to the existence of a genuine issue as to a material fact against the moving party. *Technograph Printed Circuits, Limited v. Methode Electronics, Inc., supra.* In keeping with this function and duty, the court will set forth in paragraphs *infra*: (1) a comprehensive statement of the plaintiff's case with all inferences from the court file drawn in a light most favorable to him; (2)

an analysis of the question of whether genuine issues of material fact do exist; (3) conclusions; and (4) recommendations.

### 2. Statement of Case Viewed in Light Most Favorable to Plaintiff

#### a. Firefighter Hiring Order

On September 12, 1978, Judge McGarr entered a "Memorandum of Opinion and Supplemental Order on Firefighter Hiring" in Case No. 73 C 661.[2] That order permitted the City of Chicago to fill 280 vacancies which existed for the position of Firefighter in the Chicago Fire Department upon the condition that 120 of those vacancies be allotted to Black and Spanish-surnamed applicants who had qualified by achieving passing scores on previously administered examination. Under the terms of the order, the vacancies had to "be filled by persons on the 1975 Firefighter Eligibility List," and after filling the vacancies, the "[l]ist...[was] not [to] be further used without leave of Court." Order of September 12, 1978, page 3, para. 1.

#### b. Selection of Plaintiff As a Result of Order

Plaintiff, Samuel Randle, a Black citizen of the United States, applied for a position as a Firefighter with the Chicago Fire Department, in June, 1974. In completing the application, plaintiff was required to respond to the question of whether he had ever been arrested and convicted of a felo-

1. *See e. g., Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977); *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963). Hearsay statements are entitled to no consideration, *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir. 1976), unless they fall within an exception to the hearsay rule. *Programmed Tax Systems, Inc. v. Raytheon Co.*, 439 F.Supp. 1128, 1131 n.1 (S.D.N.Y.1977). In plaintiff's memorandum in opposition to defendants' motion to dismiss, he asked the court to ignore, as incompetent evidence, two unauthenticated exhibits attached to defendants' memorandum supporting their motion to dismiss. Defendants then filed their reply memorandum, attaching as exhibits, properly authenticated documents and other exhibits to refute arguments made by plaintiff in his opposing memorandum. Plaintiff then moved to strike the affidavits accompanying defendants' reply memorandum on the grounds that: (1) they

should have been filed with defendants' original memorandum; and (2) they contain conclusory statements amounting to incompetent, inadmissible evidence. Since plaintiff invited the response by defendants in the form of additional documentation and authentication, and since he has had a "reasonable opportunity" to request "to present all material made pertinent to such motion," (Fed.R.Civ.P. 12(b)(6)) and has failed to do so, plaintiff's argument as to point (1) is debilitated and cannot stand. Thus, plaintiff's motion to strike affidavits should be denied, but the court should carefully consider plaintiff's argument as to point (2) in ascribing weight to statements contained in affidavits.

2. That case had been reassigned to Judge McGarr from Judge McMillen after remand by the Seventh Circuit in *U.S. v. City of Chicago*, 573 F.2d 416 (1978).

ny. Plaintiff responded that he had been arrested in January, 1974 for aggravated assault, but that the charges were dropped and he was not convicted of any offense.

Subsequently, plaintiff took the written and physical components of the 1974 Firefighter Exam, administered by the Department of Personnel (or its predecessor) and the Fire Department. He achieved passing scores in both phases of the 1974 Firefighter Exam and his name was placed on the 1975 Firefighter Eligibility List.

Approximately four years later, on September 19, 1978, as a consequence of Judge McGarr's September 12, 1978 Firefighter hiring order, the Department of Personnel of the City of Chicago sent plaintiff notification that he was being considered for employment as a Firefighter. The notification read in pertinent part:

> Your name has been reached on the Eligible List for Firefighter... Preliminary information regarding this vacancy is as follows:
> LOCATION: Fire Academy
> HOURS: Shift Work
> SALARY: $1,159.00 per month
> ...[Y]ou will be scheduled for and required to pass a rigid medical examination prior to appointment to the position of firefighter. Do not resign your present job until the physical examination has been completed and you are notified to report for training.

(Complaint, Ex. A). The notification did not advise plaintiff that a background investigation had yet to be conducted. Thereafter, plaintiff passed the "rigid medical examination," attended the Fire Academy and completed training for the position of Firefighter. He graduated from the Academy, was certified as a Firefighter, and was assigned to Engine Company 44, located at Lake and Kedzie in Chicago.

### c. Hearing on Plaintiff's "Arrests"

#### (1) Notice of Hearing

Two months after the entry of Judge McGarr's order, and after plaintiff had become a "certified" Firefighter, the Department of Personnel issued a notice to plaintiff which read in pertinent part:

> This is to inform you that on the basis of an investigation into your background, evidence exists that may terminate you from your position with the Chicago Fire Department, namely:
> Arrests, 1974, 1977
> If you wish to contest *this evidence*, you must appear at the Department of Personnel...on November 28, 1978 at 10:00 a. m. ... [Y]ou must notify the Department of Personnel within three days of your hearing date to get a continuance. *Your failure to do this will result in your dismissal from the Chicago Fire Department.*

(Complaint, Ex. C) (Emphasis added).

#### (2) Hearing

On the morning of November 28, 1978, plaintiff reported to the office of the Department of Personnel as instructed. While sitting in the reception area, awaiting for his case to be called, the Assistant Corporation Counsel who was to handle the inquiry into his arrests told plaintiff that he had nothing to worry about and that he would just be asking a few routine questions about plaintiff's arrest record. No mention was made that there would be any inquiry into "criminal conduct." What then unfolded was, basically, an abbreviated trial on the merits of two previous state criminal charges, one for aggravated assault in 1974 and the other for possession of heroin in 1977. Each of these charges had been dismissed by the state court for lack of evidence or lack of prosecution. Plaintiff was not represented by counsel at the hearing. Evidence in connection with the aggravated assault arrest was elicited solely through the testimony of plaintiff, himself, called as an adverse witness, under circumstances permitting the examiner to lead the witness.

#### d. Termination

On December 19, 1978, the Chairman of the Personnel Board sent a letter to the Commissioner of the Chicago Fire Department advising him that it was the:

determination of the Personnel Board ... that Samuel Randle does not meet the qualifications of the Chicago Fire Department and therefore should be terminated from his position of Firefighter. (Complaint, Ex. D). The Commissioner of the Fire Department ordered plaintiff terminated as a firefighter, effective on or about January 1, 1979.

### e. *Complaint*

Thereafter, on January 31, 1979 plaintiff filed this action for declaratory, injunctive and monetary relief under 42 U.S.C. §§ 1981 and 1983, predicating jurisdiction on 28 U.S.C. §§ 1331 and 1343(3) and §§ 2201, 2202. He contended that the City of Chicago, under the auspices of the Department of Personnel, officially adopted a practice or policy, in connection with the September, 1978 selection of Firefighter candidates, that would result in the disqualification and/or termination from employment of individuals with a previous arrest record. He further contended that defendants designed this employment criterion purposefully to discriminate against Black employees of the Chicago Fire Department, knowing that the arrest record criterion would have a greater adverse impact on Blacks. Finally, plaintiff alleged that this employment criterion is not uniformly or generally applied by defendants as it is illegal under Illinois law.

### 3. *Analysis of Genuine Issues of Material Fact*

### a. *Identification*

In his Memorandum in Opposition to Defendants' Motion to Strike Defendants' Affidavits, plaintiff has identified, in so many words, what he contends constitute genuine issues of material fact. They generally fall into two broad categories, one racially-based, the other nonracially based: (1) those involving defendants' alleged intentional invidious discrimination against plaintiff on the basis of race; and (2) those involving a denial of due process as guaranteed by the Fourteenth Amendment.[3] Specifically, those two principal issues, with their subsidiary issues, may be organized as follows:

1. Whether the defendants intentionally discriminated, invidiously, against plaintiff by adopting a practice or policy of using the "arrest record" criterion to disqualify candidates, including plaintiff, after the issuance of Judge McGarr's September 12, 1978 Firefighter Hiring Order.

    a. Which set of city regulations, if any, applied to plaintiff's circumstances.

    b. Whether the regulations, so specified, should be construed to apply strictly to conduct engaged in by a person *while employed by the City* either as career service or probationary employee.

    c. Whether the defendants employed the "arrest record" criterion in relation to this plaintiff.

    (1) If a written rule exists authorizing use of such criterion.

    (2) If no written rule exists, whether it was employed in this case, *de facto.*

    (3) Whether, under the law, consideration of evidence relating solely to arrests is tantamount to consideration of arrest records.

    d. Whether the defendants knew or should have known that the "arrest record" criterion would have a disparate and greater disqualifying impact on Blacks, including this plaintiff, than on Whites.

    (1) Was the "arrest record" criterion illegal under Illinois law at the time it was employed in relation to this plaintiff, if it was so employed.

    (2) If it was illegal, did the defendants know, or should they have known, it was so at the time they employed it in relation to this plaintiff, if they did.

    e. Whether defendants wilfully employed the "arrest record" criterion to circumvent Judge McGarr's September 12, 1978 order.

---

**3.** Plaintiff has raised the due process issues in Part B of his Memorandum in Opposition to

Defendants' Motion to Dismiss.

(1) Whether "arrest record," or, indeed, "criminal conduct" criteria were employed by the City of Chicago uniformly to weed out *employees* and employee *candidates* (for positions other than Firefighter) unfit for City employment.

(2) Whether background investigations and related hearings were conducted as to Firefighter candidates, Firefighter probationary employees and Firefighter career service employees prior to the issuance of Judge McGarr's order. (i. e. as to persons other than those appearing on the 1975 Firefighter Eligibility List).

(a) If so, the frequency and results of such hearings in terms of % of Blacks terminated in relation to Whites.

(b) Whether the results of post-hiring order hearings show significantly more Blacks terminated over Whites.

2. Whether plaintiff suffered a deprivation of his rights under the Due Process Clause of the Fourteenth Amendment.

a. Whether the defendants' decision to terminate plaintiff affected his protectable interest in liberty.

b. Whether plaintiff had a property interest in retaining the Firefighter position.

·c. If so (as to either), whether plaintiff received sufficient due process.

(1) Whether defendants could Constitutionally terminate plaintiff for one pre-application arrest and one pre-certification arrest, after (and at the behest of defendants) he had quit his former employment, underwent and completed Firefighter training, and was working as a Firefighter, with apparently an unblemished service record.

(2) Whether the notice of hearing was sufficient to adequately apprise plaintiff as to the nature of the hearing and extent of inquiry.

(3) Whether plaintiff was misled into believing that the hearing was "routine" and unimportant so as to induce his open, uncounseled, self-deprecating testimony.

### b. *Intentional Discrimination*

Plaintiff has alleged violations of his civil rights under 42 U.S.C. §§ 1981 and 1983. A prerequisite to a claim brought under those statutes is a deprivation of a right secured by the United States Constitution. Here, stripped of its essence, plaintiff's claim is that he has been denied equal protection of the laws by defendants' intentional adoption of an employment screening device for the specific purpose of avoiding the hiring of a large number of minority recruits, as required by court order.

■ The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race. *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). In *Washington,* the Supreme Court stated:

Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another. It is also not infrequently true that the discriminatory impact ... may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds. Nevertheless we have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause *simply because* it may affect a greater proportion of one race than of another. *Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution.*

426 U.S. at 242, 96 S.Ct. at 2049 (emphasis added). Thus, to prevail ultimately, on its civil rights claim, plaintiff will have to

prove *intentional* racial discrimination,[4] such proof may rest on the totality of relevant facts of which disproportionate impact may be an element. The immediate question is whether there is a genuine issue of material fact as to whether defendants, by their practice or policy, *intentionally* discriminated against plaintiff.

■ Defendants contend that no such issue exists because the affidavit of Charles A. Pounian, Director of Personnel of the City of Chicago, (and others) conclusively show that "plaintiff was not treated any different than the other candidates, whether White, Black or Spanish, selected from the List." (Defendants' Reply Memorandum, pp. 12–13). But, as demonstrated *infra*, that contention misses the point. The point is whether defendants implemented the background investigations and hearings knowing that such procedure would have a disparate impact on Blacks.

Several of the affiants, including members of the Personnel Board, have stated that no personnel or other rules exist which allow for the termination of a City employee or the disqualification of an applicant for a position due to an arrest record, nor are they allowed to consider the existence of prior arrests in making a discharge determination. Furthermore, they averred that, although respective individual records of arrests triggered the background investigations, those records were never considered by them in arriving at the discharge determination, but rather the transcript of evidence of prior conduct was used.[5] The critical flaw in such averments is that whether or not a rule or regulation authorizes consideration of arrest records, it is clear from the present record that plaintiff's pre-selection *arrests*—and no other prior conduct— precipitated his discharge.[6] Moreover, the statistics contained in the Pounian affidavit, create rather than eliminate, a genuine issue of material fact as to whether defend-

4. Although plaintiff has not alleged a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), it is clear that "intent" to discriminate need not be shown or proved in an action thereunder. *See* discussion in *United States v. City of Chicago*, 573 F.2d 416, 420–24 (7th Cir. 1978). In the present case, it appears that intent is a necessary element, not only under *Washington v. Davis*, but also because plaintiff's discrimination claim is premised on defendants' alleged attempt to circumvent a court order. *Compare Dawson v. Pastrick*, 600 F.2d 70 n.10 (7th Cir. 1979).

5. Defendants have cited to the court, as additional authority, the decision in *Rivero v. Cahill*, 71 Ill.App.3d 618, 28 Ill.Dec. 188, 390 N.E.2d 355, decided May 3, 1979, Fourth Division, Illinois Appellate Court, purportedly to show that arrest records of an applicant for city employment may be taken into account, if a hearing is held. While the case does apparently authorize the Personnel Board's consideration of "criminal acts" premised on arrests, it certainly does not condone discharge or disapproval of an individual based *solely* on such circumstances. In that case, Rivero had been disqualified for employment as a policeman because he had a *conviction* for driving while under the influence, along with other arrests.

6. It is unclear which, if any, of the city's rules or regulations apply to plaintiff's circumstances. In their reply brief and supporting affidavits, defendants assert that plaintiff's conduct underlying his arrests was in violation of the provisions of City of Chicago Personnel Rules and of Part VI of the Rules, and Regulations, Practices and Procedures of the Chicago Fire Department. Quite inconsistently, in their original memorandum supporting their motion to dismiss, defendants had argued, unqualifiedly, that the "standard 'criminal acts' upon which plaintiff was disqualified was paragraph J of Background Investigation Standards," of the Chicago *Police* Department Regulations. As to the Chicago Personnel Rules and the Fire Department Regulations, neither state on their face, that their conduct provisions apply to employee applicants or pre-employment background investigations. Quite to the contrary, each set of rules presupposes that a person within its scope is a city employee whose conduct may require disciplinary action or other penalty. It is doubtful that background investigation rules for police officers who engage in law enforcement were intended to apply equally and as rigidly to Firefighter candidates, if at all. But even so, Judge Marshall, in *United States v. City of Chicago*, 420 F.Supp. 733, 736 (N.D.Ill.1976) has already expressed concern about certain disqualifying standards of the Chicago Police Department regulations, e. g. convictions of minor offenses such as disorderly conduct or trespass. Theoretically, a standard which bases disqualification solely on arrests and evidence related thereto, would also give rise to concern. *Cf. City of Cairo v. Fair Employment Practices Commission*, 21 Ill. App.3d 358, 315 N.E.2d 344 (1974).

ants intentionally discriminated against plaintiff. They show that since October 25, 1978, shortly after the entry of Judge McGarr's order, investigations have been conducted concerning the backgrounds of 21 out of 280 candidates selected from the 1975 list. Out of those 21, 15 candidates were Black and six were White. As of March 30, 1979, decisions have been rendered in all but four cases. Three Whites have been approved; and three Whites have been terminated from employment or disapproved as applicants. Two blacks were approved, and 9 blacks have been terminated as employees or disapproved as applicants. Clearly then, the evidence shows that over 71% of the screened persons have been Black; and of those persons screened and discharged (or disapproved) approximately 53% were Black. While these percentages, in themselves, are not conclusive of intentional racial discrimination, they do reflect a disproportionate impact which may be considered in relation to the totality of the relevant facts. These statistics taken together with their temporal relationship to Judge McGarr's hiring order raise a genuine issue of material fact as to whether the defendants intentionally discriminated against plaintiff (and others) on the basis of race. Therefore, I conclude that this issue and all of (and at least) the subsidiary issues outlined in Part 3a (Issues 1a through 1e) are viable, and that defendants' motion for summary judgment on these issues must be denied.[7]

### c. Due Process

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property . . . [and] the range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1972). "[T]o determine whether due process requirements apply in the first place, we must look . . . to the *nature*

of the interest at stake." *Id.* at 570–71, 92 S.Ct. at 2704 (emphasis in the original).

It is important, at this juncture, to define the relatively narrow scope of this court's inquiry in determining whether a genuine issue of material fact exists as to denial of due process. At this stage of the analysis, the process or procedures by which plaintiff was terminated from his position as Firefighter are irrelevant. If no protectable liberty or property interest is found to be implicated, no process is "due" and no procedural safeguards are Constitutionally mandated. *Webster v. Redmond*, 599 F.2d 793, pp. 796–797 (7th Cir. 1979). The threshold inquiry then is: (1) whether the defendants' decision to terminate plaintiff affected his protectable interest in liberty; (2) whether plaintiff had a property interest in retaining the Firefighter position.

### (1) Liberty Interest

Where a person's "good name, reputation, honor, or integrity" is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). It is not enough, however, for a person to claim that the state publicized a record of his arrest, but did not dismiss him from employment, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); nor for a police officer to claim that the reasons privately given to him for his discharge, without hearing, severely damaged his reputation, even assuming the reasons were false. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A person must show that the State imposed on him a stigma or other disability that: (1) foreclosed his freedom to take advantage of other public employment opportunities, or (2) seriously damaged his standing and associations in his community. *See Board of Regents v. Roth, supra* 408 U.S. at 573, 92 S.Ct. at 2707; *Webster v. Redmond, supra* at p. 798.

7. If the district court adopts this portion of the Report and Recommendation, plaintiff, in light of the analysis of issues related to defendants' intent in Part 3a, *supra* in text, may wish to have this magistrate reconsider its May 14, 1979 order which has the effect of restricting discovery on these issues.

■ In *Bishop v. Wood, supra*, the Supreme Court stated 426 U.S. at 347–48, 96 S.Ct. at 2078–29:

His evidence established that he was a competent police officer; that he was respected by his peers; that he made more arrests than any other officer on the force; that although he had been criticized for engaging in high-speed pursuits, he had promptly heeded such criticism; and he had a reasonable explanation for his imperfect attendance at police training sessions.

. . . .

In *Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548], we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Id. [408 U.S.] at 575 [92 S.Ct. at 2708]. This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is *no public disclosure* of the reasons for the discharge.

In this case the asserted *reasons for the City Manager's decision were communicated orally to the petitioner in private* and also stated in writing in answer to interrogatories after this litigation commenced. Since the former communication *was not made public*, it cannot properly form the basis for a claim that petitioner's interest in his "good name, reputation, honor, or integrity" was thereby impaired.

(Emphasis added). In the case at bar, plaintiff has not specifically alleged in his Complaint that his "good name, reputation, honor, or integrity" has been impaired by his termination. If he had, he would have to show a stigma foreclosing his public employment opportunities or serious damage

to his standing and associations in his community. This he could not do. First, although it is not clear from the present record, I assume *arguendo* that plaintiff received written, rather than oral, notice of discharge from the Commissioner of the Fire Department. The only reason given in the communication was that he "had not met Fire Department qualifications." (Randle Affidavit, p. 3). This statement, even if it were contained in plaintiff's personnel file and thereby arguably a "public disclosure," is relatively innocuous and would not constitute the "equivalent to a regulation barring . . . [plaintiff] from all other public employment." [8] *Webster v. Redmond, supra* at p. 798. Similarly, it could not seriously damage plaintiff's standing and associations in his community.

Furthermore, even if the communication in his files regarding his 1974 and 1977 arrests (and related transcripts of proceedings) were considered to be incorporated in the discharge communication, no protectable liberty interest of plaintiff would be affected for the same reasons stated by the *Webster* court at p. 798, n.6:

His arrest and indictment were at the time matters of public record for the publicity of which the Board was not responsible, and moreover, publication of an official act such as an arrest does itself give rise to a meritorious due process claim. *Paul v. Davis*, 424 U.S. at 712–13 [96 S.Ct. at 1165–66]. . . .

Thus, there exists no genuine issue of material fact on this record that plaintiff was deprived of a Constitutionally protected liberty interest.

### (2) Property Interest

■ Given the predicate that plaintiff cannot prove a deprivation of a Constitutionally protected liberty interest, the inquiry now turns to whether he had a protectable interest in property which was impaired or destroyed by the defendants' actions. The Supreme Court noted in *Roth*:

---

**8.** It is arguable that his employment opportunities with the City of Chicago would be limited. However, he would still be free to seek employment with county, state, federal, and suburban municipal governments.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of *entitlement* to those benefits.

408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). The key proprietary ingredient is "entitlement." *Webster v. Redmond, supra* at p. 799. Entitlement to a "property interest in employment can, of course, be created by ordinance, or by an implied contract[;] [i]n either case, however, the sufficiency of ... [such] claim ... must be decided by reference to state law." *Bishop v. Wood, supra,* 426 U.S. at 345, 96 S.Ct. at 2077.

In the instant case, it is apparently undisputed that plaintiff was a probationary employee at the time of his discharge. As such, plaintiff had no entitlement to the Firefighter position, and conceivably, under Illinois law, could have been discharged without a hearing. *See Rose v. Civil Service Commission,* 14 Ill.App.2d 337, 114 N.E.2d 768 (1957). *Cf. People ex rel. Thomas v. Bd. of Ed. of City of Chicago,* 40 Ill.App.2d 308, 317, 188 N.E.2d 237 (1963). Thus, there exists no genuine issue of material fact on this record that plaintiff had a protectable property interest in the Firefighter position.

Since, as it has been shown *supra,* neither a protectable liberty or property interest can be found to be implicated here, there exist no genuine issues of material fact as to whether plaintiff suffered a deprivation of his rights under the Due Process Clause of the Fourteenth Amendment. Thus, defendants are entitled to summary judgment as a matter of law on that issue and all subsidiary issues (2a–2c) listed in section 3a, *supra.*

### 4. *Conclusions and Recommendations*

Thus, defendants are entitled to summary judgment on the issues concerning plaintiff's allegations of denial of due process, but are not entitled to summary judgment on the issue of intentional, invidious, racial discrimination. For the foregoing reasons,

IT IS RECOMMENDED that plaintiff's Motion to Strike Defendants' Affidavits be DENIED.

IT IS FURTHER RECOMMENDED that the court construe Defendants' Motion to Strike and Dismiss the Complaint as a Motion for Summary Judgment and that it be DENIED as it relates to issues of intentional racial discrimination and GRANTED as it relates to due process issues.

IT IS FURTHER RECOMMENDED that the district court give some consideration to suggesting to the Executive Committee that this case be reassigned to the Honorable Frank J. McGarr, as an issue has been raised as to whether defendants' actions, as alleged in this Complaint, amount to a contempt or a circumvention of Judge McGarr's September 12, 1978 Supplemental Order on Firefighter Hiring entered in Case No. 73 C 661.

Dated: August 15, 1979.